M. W. SCOTT v. THE STATE.

No. 5965. Decided October 5, 1921.

**1.—Motor Vehicle—Highway Law—Statutes Construed—Indictment.**

Article 820M, Vernon's P. C., with reference to the offense of an automobile striking any person, etc., and not rendering assistance, etc., is valid, and the motion to quash the indictment because of the invalidity of said statute is properly overruled. Distinguishing Russell v. State, 88 Texas Crim. Rep., 512.

**2.—Same—Statutes Construed—Words and Phrases.**

This court concludes that a fair and reasonable construction of the statute (Art. 280-M, supra) is that the party should render all the aid which would reasonably appear to him as an ordinary person to be necessary at the time, including taking the injured person to a physician, etc., and that the word required in the connection used, means only "necessary."

**3.—Same—Indictment—Knowingly—Words and Phrases—Pleading.**

Where defendant complained that the indictment is defective in not alleging that accused knowingly struck the party injured, or that he knowingly had struck him, failed to stop and render aid, the same is untenable, as the word does not appear in the description of the offense.

Appeal from the Criminal District Court of Tarrant. Tried below before the Honorable Geo. E. Hosey.

Appeal from a conviction of not rendering assistance to a person who was struck by defendant with his automobile, etc.; penalty, a fine of $100, and 90 days in jail.

The opinion states the case.

*Baskin & Eastus* and *David Greines,* for appellant.—Cited Griffin v. State, 218 S. W. Rep., 494, and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was convicted under a prosecution based on Article 820M, Vernon's P. C., and his punishment assessed at a fine of $100 and ninety days confinement in the county jail.

No statement of facts accompanies the record, and the case is presented here on the sole question as to whether said article is sufficiently specific in defining the offense sought to be denounced. In 1917 the Legislature passed an Act which has sometimes been called the "Highway Law," but more properly speaking, one "Regulating Operation of Motor Vehicles." This law was amended at the same session, and again in 1919, and with these amendments is brought forward in Vernon's P. C. as Articles 820A and 820Z. We have already had occasion to review this law, upholding some of the provisions, and holding Article 820D, relating to glaring headlights, void for indefiniteness: Griffin v. State, 86 Texas Crim. Rep., 498, 218 S. W. Rep., 494; and also that a portion of subdivision (a), Article 820K is likewise inoperative and unenforceable in a criminal proceeding for the same reason. Russell v. State, 88 Texas Crim. Rep. 512; 228 S. W. Rep. 566.

We quote so much of Article 820M as may be necessary, deleting for convenience the portions not here required. "Whenever an automobile strikes any person, the driver of, and all persons in control of such automobile, shall stop, and render to the person struck all necessary assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment, if such treatment be required, or if such carrying is requested by the person struck." Appellant was charged under this law; if the law can be held good, the indictment is sufficient.

Counsel for appellant, in his brief, admits the Article is commendable in purpose. This is true with reference to the whole of the Act in question. Not until 1917 did our Legislature undertake general legislation on the subject, but in many states the necessity for statutory enactments to supplement the common law rules was recognized many years before. With the constantly increasing use of motor vehicles both for business and pleasure purposes, the demand for road regulations in their use had become imperative. The driver who may strike a person or vehicle today may tomorrow himself be the victim.

The general rule for the construction of statutes, of course, applies, and has been recognized not only by the courts of our own, but of other states, as well as by the text writers on motor vehicles.

The following quotation is from Black's interpretation of the Law, Section 115, and is copied as Section 130, page 93 in "The Law Applied to Motor Vehicles," by Blakemore.

"Statutes enacted by the legislature in the exercise of the police power, for the promotion or preservation of the public safety, health, or morals, may sometimes impinge upon the liberty of individuals, by restricting their use of their property, or abridging their freedom in the conduct of their business. When this is the case, such statutes ought always to receive such a construction as will carry out the purpose and intention of the legislature with the least possible interference with the rights and liberties of private persons; such enactments being "designed to further the general welfare by derogating from the liberty of a few."

Likewise, in Huddy on Automobiles, Section 68, we find the following:

"A statute creating a criminal offense is entitled to a strict construction so that the application of the act will not be extended beyond the clear intention of the law makers.

"But, nevertheless, the guiding principle in the interpretation of statutes is the ascertainment of the legislative intent, and a statute should not receive such a narrow construction as to exclude those acts intended to be included within its application.

"A common sense interpretation must be given to a statute, considering the whole statute in construing a part thereof.

"In construing a motor vehicle law, the court should give force and effect to every part of it to carry out the intent of the legislature, if possible, such intent to be ascertained from the language in its plain and natural meaning."

Also, part of Section 241:—

"A highway is for the use of the public at large; indeed it has been defined to be a road which every citizen has a right to use. This being so, it is necessary that the travel and traffic on the highway shall be governed by certain laws so that the rights of each citizen may be certain of protection."

Section 775, from same author:—

"Statutes have been enacted in some jurisdictions requiring an automobilist, upon causing injury to property or to another traveler, to stop his machine, and furnish his name or other means of identification to the traveler injured or to a police officer, or to give assistance to the person injured. The flight of an automobilist after causing injury to another, is deemed such a serious offense that it is made a felony in some jurisdictions. The constitutionality of such a statute is affirmed by the courts, though there is a strong argument that it compels one to give evidence against himself. Such a law is affirmed on the ground that it is within the police power of the State."

Since motor-vehicles have become a common means of travel upon the public highways, many statutes have been enacted in an effort to protect the public health and safety from the consequences of the use of automobiles upon the roads and streets. Some of these statutes have

been assailed upon the ground that they manifested an exercise of power not inherent in the legislative department of the government, and others have been attacked upon the ground that in them are found unreasonable requirements. Ruling Case Law, Vol. 6, page 397, Berry on Automobiles, Sec. 1601; Ex parte Parr, 82 Texas Cr. Rep. 528; State v. Mayo, 26 L. R. A., new series, page 502; The People v. Rosenheimer, 46 L. R. A., new series, page 977; State v. Sterrin, 98 Atlantic Rep. 482.

In some of these decisions, statutes requiring that one causing an injury by collision with an automobile shall do some affirmative act, such as, furnishing information showing his name and address, have been upheld for the reason thus stated in one of the opinions:

"The legislature might prohibit altogether the use of motor vehicles upon the highways or streets of the State. It has been so held in State v. Mayo, 106 Me. 62, 26 L. R. A. (N. S.) 502, 75 Atl. 295, 20 Ann. Cas. 512, and Com. v. Kingsbury, 199 Mass. 542, 127 Am. St. Rep. 513, 85 N. E. 848. Doubtless the legislature could not prevent citizens from using the highways in the ordinary manner, nor would the mere fact that the machine used for the movement of persons or things along the highway was novel justify its exclusion. But the right to use the highway by any person must be exercised in a mode consistent with the equal rights of others to use the highway. That the motor vehicle, on account of its size and weight, of its great power, and of the great speed which it is capable of attaining, creates, unless managed by careful and competent operators, a most serious danger, both to other travelers on the highway and to the occupants of the vehicles themselves, is too clearly a matter of common knowledge to justify discussion." (People v. Rosenheimer, supra).

And in another, the conclusion is stated in the following language:

"The defendant also claims that the statute is unconstitutional, in that it requires him to furnish evidence which might be used against him in a criminal proceeding. Bill of Rights, art. 15. The same question has been raised in other states, and in each the conclusion has been reached that the statute is valid. People v. Rosenheimer, 209 N. Y. 115, 102 N. E. 530, 46 L. R. A. (N. S.) 977 Ann. Cas. 1915 A, 161; Ex parte Kneekler, 234 Mo. 632, 147 S. W. 983, 40 L. R. A. (N. S.). 622, Ann. Cas. 1913 C, 923; People v. Diller, 24 Cal. App. 799, 142 Pac. 797. In each of these cases it is pointed out that the operation of an automobile upon the public highways is not a right, but only a privilege which the state may grant or withhold at pleasure (Commonwealth v. Kingsbury, 199 Mass. 542, 85 N. E. 848, L. R. A. 1915 E, 264, 127 Am. St. Rep. 513), and that what the state may withhold it may grant upon condition. One condition imposed is that the operator must, in case of accident, furnish the demanded information. This condition is binding upon all who accept the privilege.

"The statute confers a privilege which the citizen is at liberty to accept by becoming a licensee, or not, as he pleases. Having accepted the privilege, he cannot object to any conditions which have been attached thereto by a grantor with power to entirely withhold the privilege." State v. Corron, 73 N. H. 434, 445, 62 Atl. 1044, 1045 (6 Ann. Cas. 486). (State v. Sterrin, 98 Atl. Rep. 482)."

We have just recently received a supplemental brief from appellant citing the Russell case, *supra,* and urging that it and the Griffin case, *supra,* and other authorities cited by him are decisive of this case. In the subsequent discussion we are not unmindful of the principles upon which these cases were disposed of, but have reached the conclusion that the law in question can be upheld without doing violence thereto.

A party operating an automobile which may injure another in collision ought to be impelled by humanitarian motives, in the absence of any law, to tender aid in an effort to minimize the result of the injury. In doing this he would naturally and instinctively do the thing which to him, under the circumstances, appeared to be proper and necessary to alleviate suffering. If his own car was uninjured so that it might still be operated perhaps the most natural thing for him to do would be to try and get the injured persons to a physician or surgeon as quickly as possible.

The statute ought not be given such a construction as would or might result in manifest harm to a person accused of violating it. It would be impracticable for the Legislature to undertake to say that in a certain kind of accident this particular kind of aid should be extended, and in another accident aid of some other character would be proper. Every case must be governed by the circumstances attendant upon it. What would appear to be "All *necessary* aid," in one case might not so appear in the next one; likewise, it might reasonably appear to be necessary to get the injured person to a physician or surgeon for treatment in one instance and not in another; hence, the fact that it would be futile for the lawmakers to undertake to be specific in particularizing what aid should be rendered becomes apparent.

That the statute contains a humane provision cannot be gainsaid. If it can be construed to require that to be done which ought to be done even in the absence of the law, and without hurt to the individual, it ought, as so construed, to be upheld.

It would be manifestly unfair in measuring the extent of the aid rendered to have the court or jury pass upon that issue in the light of developments subsequent to the time of the accident. An injury might appear slight at the time, suggesting little necessity for aid of any kind, but internal injuries of serious nature might develop later. An accused could not be held criminally liable for a failure to do what was not reasonably apparent to him as necessary at the time. One acting in apparent necessary self-defense does so from what appears to him, viewed from his standpoint at the time, with all the facts and circum-

stances within his knowledge, and not from the viewpoint of somebody else, or the jury, in the light of subsequent events.

We have reached the conclusion that a fair and reasonable construction of the statute in question is that the party should render all the aid which would reasonably appear to him as an ordinary person at the time to be necessary, including taking the injured persons to a physician or surgeon, if so requested by them, or if it reasonably appears to accused that medical treatment be necessary; we think the word "required" in the connection used means only "necessary." The jury ought to be so instructed (if it be an issue), that, if accused gave all the aid which under the circumstances reasonably appeared to him to be necessary, he should be acquitted; and that if under all the circumstances it did not reasonably appear to him to be necessary to carry the injured parties to a physician or surgeon for treatment, he could not be convicted for a failure to do so, unless he was requested by them to be so taken, and declined.

We can perceive no violence to the general rule of construction in reaching this conclusion. No new provision has been read into the law. We only construe what "all necessary aid" means in the statute; and say it must be determined from an accused's standpoint as to how much and what character of aid appeared to be necessary under any given state of facts. Surely the driver of an automobile should have no trouble in understanding in advance that in case of an accident he was expected and required to do what appeared to him to be necessary to alleviate suffering.

We think no error was committed by the trial judge in overruling the motion to quash the indictment and in arrest of judgment, because of the matters urged against the sufficiency of the statute in question.

Appellant complains that the indictment is defective in not alleging that accused "knowingly" struck the party injured, or that "knowing" he had struck him failed to stop and render aid. We cannot agree to this contention. The word "knowingly" or "knowing" does not appear in the description of the act denounced as an offense, and it is not necessary for the State to so allege. If it becomes an issue on the trial, lack of knowledge on the part of a defendant that he had injured some one would excuse him and be a defense to a prosecution under the article in question. The trial judge recognized this as the law, and submitted that issue to the jury.

Believing the article of the statute should be upheld as construed in this opinion, the judgment of the trial court is affirmed.

*Affirmed.*