Thomas Bruce BOYER, Jr., et al.,
Appellants,

v.

GULF, COLORADO & SANTA FE RAIL-
WAY COMPANY, Appellee.

No. 13064.

Court of Civil Appeals of Texas.

Houston.

Oct. 10, 1957.

Rehearing Denied Oct. 31, 1957.

George Roane, Rosenberg, M. Michael Gordon, Blades, Crain, Slator & Winters, and W. H. Blades, Houston, for appellant.

Van Slyke & Van Slyke, Richmond, and Wigley, McLeod, Mills & Shirley and Robert W. Alexander, Galveston, for appellee.

WOODRUFF, Justice.

Appellant, Thomas Bruce Boyer, Jr., individually and as next friend of his minor daughters, Elaine Margaret Boyer and Jenefer Ann Boyer, who also sued through their guardian ad litem, George Roane, joined by Frank D. Potter and wife, Edith Potter, being all the heirs of Daphne Edith Boyer, under the Texas Death Statute, instituted suit against the appellee, Gulf, Colorado & Sante Fe Railway Company, seeking damages for the alleged negligence of the appellee, its servants and employees, in the operation of its train which caused severe injuries to the appellant, Thomas Bruce Boyer, Jr., and his wife, Daphne Edith Boyer, from which injuries sustained by her, Daphne Edith Boyer died. This accident occurred on May 1, 1952, when the automobile in which they were riding and which was being driven by appellant, Thomas Bruce Boyer, Jr., ran into the side of appellee's freight train at its crossing over Highway 288 at Arcola in Fort Bend County, Texas. Appellants Potter and wife were the parents of Daphne Edith Boyer.

Appellants went to trial on their second amended original petition and in paragraph VI thereof they alleged in separate subparagraphs nine specific grounds of negligence on the part of appellee, its servants and employees, consisting of failing to use various devices and means for giving visual and audible signals and warnings of the presence of the train while crossing the highway. The remaining allegations set forth in sub-paragraph 8 read as follows:

"In failing to render all necessary assistance to plaintiff and his said wife immediately after said collision and after defendant discovered or under common law should have discovered their plight as required, and in failing

to carry plaintiff and his wife to a physician or surgeon for medical or surgical treatment, or to call an ambulance or notify anyone of the serious condition of such parties, all in violation of Article 1150, Penal Code of the State of Texas, or against common law."

Appellants prayed for a total of $88,000 actual damages for the injuries sustained by Thomas Bruce Boyer, Jr., and their loss occasioned by the death of Daphne Edith Boyer. They also prayed for $25,000 exemplary damages.

The appellee relied on its third amended original answer which contained a number of special exceptions, a general denial, a plea of unavoidable accident and some twenty-six allegations of contributory negligence.

The case was submitted to the jury on sixty-eight Special Issues. Upon receipt of the verdict, so counsel concede in their briefs, the trial judge read each answer aloud and where no answer was given by the jury in response to a Special Issue, he announced, "no answer." At the conclusion of the reading of the verdict and before releasing the jury, he called all counsel to the Bench and asked if there was a conflict and if there was any objection to the court's receiving the verdict. No objection being voiced, the verdict was received and the jury discharged. Among other Special Issues which were not answered by the jury was Special Issue No. 32.

Special Issues No. 1 through No. 29 submitted nine acts of alleged negligence on the part of appellee's employees with appropriate Issues of proximate cause. The jury failed to find them guilty of any act of negligence which was a proximate cause of the event. Special Issues No. 33 through No. 63 submitted fourteen separate alleged acts of contributory negligence on the part of appellant, Thomas Bruce Boyer, Jr., with appropriate Issues of proximate cause. The jury found that he had committed twelve acts of negligence, each of which was found to be a proximate cause of the event.

Special Issues numbered 64, 66, 67 and 68 were all answered but they are not material to this discussion.

The remaining Special Issues numbered 30, 31, 32, and 65 and the jury's answers thereto form the crux of this case on appeal. They read as follows:

Special Issue No. 30

"Do you find from a preponderance of the evidence that the defendant, Gulf, Colorado and Santa Fe Railway Company, failed to render all assistance to plaintiff's wife immediately after said collision and after defendant discovered, or should have discovered her plight?

"Answer 'Yes' or 'No'.

"If you have answered Special Issue No. 30 'Yes' and only in such event, then answer:

Special Issue No. 31

"Do you find from a preponderance of the evidence that such failure, if any, to render all assistance to plaintiff's wife immediately after said collision and after defendant discovered, or should have discovered, her plight, was negligence as that term is herein defined to you?

"Answer 'Yes' or 'No'.

"If you have answered Special Issue No. 31 'Yes' and only in such event, then answer:

Special Issue No. 32

"Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause, as that term is herein defined, of the death of plaintiff's wife?

"Answer 'Yes' or 'No'.

Special Issue No. 65

"What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiffs, Thomas Bruce Boyer, Jr., Elaine Margaret Boyer and Jenefer Ann Boyer, Minors, husband and minor daughters of Daphne Edith Boyer, respectively; and Frank Dunkerly Potter and Edith Potter, father and mother of Daphne Edith Boyer, for for the loss, if any, sustained by them as a direct and proximate result of the negligence of the defendant, if any, and death of Daphne Edith Boyer, taking into consideration exclusively the following elements of damage and none other: * * * (instructions as to proper elements)

" * * *

" * * * but shall confine yourselves exclusively to the elements of damages set forth herein.

"You will answer this issue by stating the amount in dollars and cents, if any, you find. If you find no amount as to any or all of said parties, your answer will be 'None' as to such party or parties.

"Answer:

| | |
|---|---|
| "Thomas Bruce Boyer, Jr., husband | $————— |
| "Elaine Margaret Boyer, Minor | $————— |
| "Jenefer Ann Boyer, Minor | $————— |
| "Frank Dunkerly Potter, Father | $————— |
| "Edith Potter, Mother | $—————." |

The jury answered Special Issues Nos. 30 and 31 "Yes" but failed to make any answer in response to Special Issue No. 32. It answered Special Issue No. 65 by filling in opposite the name Thomas Bruce Boyer, Jr., the amount of $5,000 and beside the names of the minors, Elaine Margaret Boyer and Jenefer Ann Boyer, the sum of $10,000 each.

The appellee filed its motion for judgment and on April 10, 1956, the trial court entered judgment denying appellants a recovery.

On April 11, 1956, appellants filed a motion to set aside the judgment and to enter judgment for appellants and, in the alternative, to grant a new trial. An amended motion was filed within due time and upon presentation was overruled by the trial court, to which action of the court exception was taken, notice of appeal given, and this cause is now properly before this Court on appeal.

■ The statement of facts which was filed in this cause was prepared by the court reporter in the trial court at the instance of the appellee and was approved by the trial judge. Appellants have filed a motion in this Court seeking to file a narrative statement of facts. This motion has been taken with the case and since the narrative statement of facts has not been approved by the trial court or appellee's counsel their motion must be refused. Appellants have also moved to tax the costs of the statement of facts against appellee. This motion is likewise refused.

Appellants predicate their appeal on one Point of Error which reads as follows:

"Where plaintiff's vehicle and defendant's train, a vehicle, collided on a public highway and plaintiff's wife was injured thereby, regardless of whose fault, defendant under statute and at common law owed a duty after discovery to render reasonable assistance to such injured party and where a jury in answer to special issues found as matters of fact that defendant failed to render such assistance, that such failure was negligence and that plaintiffs sustained certain monetary losses as a direct and proxi-

mate result of such negligence of defendant and the resulting death of plaintiffs' wife and mother, the plaintiffs were entitled to judgment on such verdict and defendant cannot complain thereof where it neither moved for judgment non obstante veredicto or a new trial, but moved for judgment on the verdict and thereby affirmed the jury's findings and the Court erred in disregarding the jury's findings and rendering judgment for defendant and in not entering judgment for plaintiffs or granting them a new trial on the negligence of defendant in failing to render aid, which failure directly and proximately resulted in death to plaintiffs' wife and mother."

Appellee asserts by a counter point that this Point of Error should not be considered because it was not distinctly set forth in appellants' Motion for New Trial as a ground of error.

█ We have referred to appellants' First Amended Motion for Judgment or New Trial and find that the matters set forth in paragraph I and Section (f) of paragraph II sufficiently support appellants' Point of Error to come within the provisions of Rules 321 and 374, Texas Rules of Civil Procedure. Lang v. Harwood, 145 S.W.2d 945. Appellee's contention that the Point of Error be not considered is therefore overruled.

At this point we believe that a brief statement of the testimony of the witnesses relating to the physical condition of Daphne Edith Boyer immediately after the collision should be set out.

Appellant, Thomas Bruce Boyer, Jr., testified that immediately before the impact he was driving his Ford station wagon through a light fog on Highway 288 going about 30 to 35 miles per hour and suddenly seeing an object on his right moving toward the road, he "slammed on his brakes" and that was all he "knew for a while." Although "foggy on it" he remembered hearing his wife saying "Honey" and that

she made "moans" while sitting next to him in the car and was trying to say something. He could not say how long it was after the collision. It seems to be agreed that the collision occurred at some time between 1:50 a. m. and 2:00 a. m.

Appellants' next witness, Pierson Rowell, was the first person to arrive after the accident. Hearing moans when he stopped for the train blocking the crossing at 2:02 a. m., he found an unconscious man pinned behind the steering wheel of a wrecked Ford station wagon on the left shoulder of the road. After wiping the man's mouth out with a handkerchief to aid his breathing, Rowell drove his pick-up truck about three-fourths of a mile and asked a lady to call an ambulance. Returning to the wreck, he went to the injured man and upon looking through the floor boards of the station wagon he saw the body of a woman on the ground on the righthand side with one leg across the frame. In going around the front of the automobile, he touched the radiator or the block and it was cold. After moving some debris, he felt the cheek of the woman and told his son, who had accompanied him, "Son, she is dead, cover her back up." The injured man was removed from the station wagon and laid on a pad. Rowell walked toward the front of the train, about 600 feet, and found the crew engaged in trying to put a derailed freight car back on the track. After telling the men there had been an accident at the crossing, he returned but could not remember whether or not any of the crew men went with him.

It was shown that the train consisted of 97 cars. The station wagon struck the 75th car, breaking the flanges on two of its wheels and derailing it, but the train continued about 14 car lengths until the air hose broke, thus activating the emergency brakes. When the train stopped, the last eight or nine cars remained east of the crossing. Rowell testified that the ambulance arrived about 45 minutes after being called and that he stayed at the scene until after the inquest had been held.

The third witness who testified relative to Daphne Edith Boyer's condition was B. E. Hern, who arrived about 2:20 to 2:30 a. m. He saw two injured people, a man and a woman, lying on the ground. The man was groaning but the woman appeared to be unconscious. He thought she was dead. He did not try to assist either of them. Mr. Hern walked to the rear of the train, where he saw a member of the crew with a red lantern and some flares. He declined to go to the crossing, saying that he would have to flag any train approaching to prevent a collision. Hern then walked forward toward the engine, about 20 cars, where he found the crew attempting to put the derailed car on the tracks. He told them about the accident and the conductor, with two members of the crew, then walked to the scene of the collision and set out some flares on the highway. There is no testimony that any member of the crew gave any aid to either of the people involved in the wreck.

■ By the pleadings as set out above, and the submission of Special Issues Nos. 30, 31 and 32, appellants sought a recovery under a theory of negligence recognized in a few of our sister states. See Note, 69 L.R.A. 533. This theory is that where a party has been injured so as to render him helpless by reason of coming in contact with another, even though the injury was not due to any negligence of the latter and may have been caused by the negligence of the injured party, nevertheless such other party when discovering the injured person in a helpless condition, owes him the duty to render assistance and thus prevent any aggravation or extension of such injury. While several articles in reference books have been cited, in the main they all seem to stem from the discussion in the above mentioned Note in 69 L.R.A. 533.

The acceptance of this theory generally is best reflected by the American Law Institute's Restatement of The Law of Torts, Section 322, where it is said:

"If the actor by his tortious conduct has caused such bodily harm to another as to make him helpless, the actor is under a duty to use reasonable care to prevent any further harm which the actor then realizes or should realize as threatening the other.

"Caveat: The Institute expresses no opinion as to the existence or nonexistence of a similar duty to aid or protect one whom the actor's nontortious conduct has rendered helpless to aid or protect himself."

We have been unable to find any authority in Texas adopting this theory of liability. In fact, after carefully studying a number of cases involving basically the same theory we conclude that it is not the law in this jurisdiction. Riley v. Gulf C. & S. F. Railway Company, Tex.Civ.App., 160 S.W. 595; Wills v. International & G. N. Railroad Company, 41 Tex.Civ.App. 58, 92 S.W. 273; Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109. We find that the above rule is not followed in several other jurisdictions as indicated by Griswold v. Boston & M. R. R. Company, 183 Mass. 434, 67 N.E. 354; Kendall v. Louisville & N. R. Company, Ky., 76 S.W. 376, and Union Pacific Ry. Company v. Cappier, 66 Kan. 649, 72 P. 281.

However, by the same allegations contained in Sub-section 8 of paragraph VI of their trial petition, appellants also sought to impose the same duty to render aid to Daphne Edith Boyer upon the appellee, its servants and employees, alleging a violation of Article 1150 of the Penal Code of the State of Texas, commonly known as the "Hit and Run" law, which reads as follows:

"Whenever an automobile, motorcycle or other motor vehicle whatsoever, regardless of the power by which the same may be propelled, or drawn, strikes any person or collides with any vehicle containing a person, the driver of, and all persons in control of such automobile, motor vehicle or other ve-

hicle shall stop and shall render to the person struck or to the occupants of the vehicle collided with all necessary assistance including the carrying of such person or occupants to a physician or surgeon for medical or surgical treatment, if such treatment be required, or if such carrying is requested by the person struck or any occupant of the vehicle collided with; and such driver and person having or assuming authority of such driver shall further give to the occupant of such vehicle or person struck, if requested at the time of such striking or collision or immediately thereafter, the number of such automobile, motorcycle or motor vehicle, the names of the passenger or passengers not exceeding five in each automobile or other vehicle, together with the address of each one thereof. Any person violating any provision of this article is punishable by imprisonment in the penitentiary not to exceed five years or in jail not exceeding one year or by fine not exceeding five thousand dollars, or by both such fine and imprisonment. Acts 1917, p. 484."

Appellants urge the well settled rule that words, in common use, when contained in a Statute, will be read according to their natural, ordinary and popular meaning, unless a contrary intention is clearly apparent from the context. 39 Tex.Jur., pg. 197. They also contend that Article 1150 of the Penal Code does not exclude railroad trains from its provisions, either expressly or by implication. The wording "or other motor vehicle whatsoever, regardless of the power by which the same may be propelled, or drawn" when given its ordinary and popular meaning, in our opinion, includes a railroad train.

In support of their position, appellants cite Brooks v. E. J. Willig Truck Transportation Co., 40 Cal.2d 669, 255 P.2d 802, 808. Although the defendant's driver in that case was charged with several acts of negligence in striking the pedestrian who was killed in the accident, the petition fur-

ther alleged that he also failed to stop and render aid in violation of Sections 480 and 482 of the Vehicle Code of California. The first of these Sections made it a criminal offense for the driver of a vehicle involved in an accident, where another is injured, to fail to stop and render the aid as specified in Section 482.

In commenting upon the application of that Statute to that case, the Supreme Court of California in part said:

"Sections 480 and 482 of the Vehicle Code require an automobile driver who injures another to stop and render aid. This duty is imposed upon the driver whether or not he is responsible for the accident, and a violation gives rise to civil liability if it is a proximate cause of further injury or death."

Appellants also cite the earlier California case of Summers v. Dominguez, 29 Cal. App.2d 308, 84 P.2d 237, 239, as being applicable. There also a pedestrian sued a truck driver for striking him on a highway and failing to stop and render aid. In suing for damages, he alleged several acts of negligence on the part of the driver proximately causing his injuries, and for a second cause, the failure on the part of the defendant to stop and render assistance in violation of Section 482 of the Vehicle Code. In commenting on appellant's contention that no cause was stated under the second cause, the Court said:

"Also the objection urged by appellant as to the second cause of action cannot be upheld. This particular cause of action was for a wilful breach of a statutory duty to render aid. As pointed out in American Law Institute, Restatement of the Law, 2nd volume, in Tort, page 870, section 322, Comment d: 'The liability which this Section recognizes is not imposed as a penalty for the actor's original misconduct, but for a breach of a separate duty to aid and protect the other after his helpless condition caused by the

actor's misconduct is or should be known.'

"The comment further states that it is immaterial whether or not the accident was caused by the contributory negligence of the injured person, which would preclude a recovery for the original injury for any further harm suffered by the injured person due to exposure or neglect would be due to the tortious act of defendant, arising out of the violation of section 482 of the Vehicle Code, St.1935, p. 171. The wrongs of defendant were separate and distinct, one being a violation of a common-law duty, the other statutory, each independent of the other."

There, too, the Court held that the violation of Section 482 gave rise to the second cause of action and to that extent this case supports appellants' contention.

However, it should be pointed out in both of these cases that common law actions based on negligence were also relied upon by the plaintiffs and were established upon trial. In fact, in Summers v. Dominguez, supra, the opinion in the paragraph immediately following the one last quoted discloses that after the defendant during the trial had testified under a rule of procedure which admitted his guilt and exonerated the plaintiff of all contributory negligence, the plaintiff no longer felt the need of the second cause of action and dismissed it.

This observation is made because some of the statements contained in these cases were made on the premise that the defendant had been guilty of a wrongful act in creating the condition which renders the complaining party helpless. In our case, the jury exonerated the appellee of all misfeasance before the alleged duty to render aid arose. This, we believe, should be borne in mind throughout this discussion.

■ These authorities, however, we believe, lend support to appellants' conten-

tion that a violation of Article 1150 of the Penal Code of Texas gives rise to an action in tort, and we so hold.

■ Appellee contends that if the terms of Article 1150 of the Penal Code are applicable, it must be proved that the party charged with failure to stop and render aid knew that the injury had been inflicted. In the case of Scott v. State, 90 Tex.Cr. R. 100, 233 S.W. 1097, 16 A.L.R. 1420, cited by appellee in support of its contention, the Court of Criminal Appeals held that it was not necessary in an indictment charging an offense under Article 1150 of the Penal Code to allege that the act was knowingly done. In Harrison v. State, 151 Tex.Cr.R. 606, 210 S.W.2d 591, it was held that knowledge on the part of the defendant charged under the terms of Article 1150 of the Penal Code can be shown by circumstances. We believe that the same rule would apply in this case, and appellee's contention on this point is overruled.

■■ Where, however, a party who is charged with failing to render aid has committed no wrongful act proximately causing the original injury, he is not responsible for the damages accruing from that injury. He is responsible only for any further harm or injury proximately caused by his failure to render aid. Brooks v. E. J. Willig Truck Transportation Company, and Summers v. Dominguez, supra. Consequently, in this case, though appellants by the jury's answers to Special Issues Nos. 30 and 31 established negligence on appellee's part by proving a violation of Article 1150 of the Penal Code, the further burden rested upon them to prove that the failure of the train's crew to render aid to Daphne Edith Boyer after discovering her plight was a proximate cause of her death as submitted in Special Issue No. 32.

■ They had the right to establish that fact by submitting this Issue and also the right to have the jury pass upon it. However, when they agreed to the Court's

accepting the verdict and discharging the jury, with knowledge that the jury had not answered Special Issue No. 32, they waived the further consideration of the verdict by the jury. Lewis v. Texas Employer's Insurance Association, 151 Tex. 95, 246 S.W. 2d 599.

■ Appellants urge, however, that although Special Issue No. 32, calling for specific finding as to whether or not appellee's negligence was a proximate cause of the death of Daphne Edith Boyer, was not answered, nevertheless they can rely on the jury's finding of damages expressed in terms of dollars and cents, made in response to Special Issue No. 65, commonly referred to the "damage issue" as the general finding that appellee's negligence was a proximate cause of her death. In illustrating their contention, they narrow the pertinent parts of Special Issue No. 65 to the following language:

"What sum of money, if any, * * * would fairly and reasonably compensate the plaintiffs, * * * for the loss, if any, sustained by them as a direct and proximate result of the negligence of the defendant, if any, *and* death of Daphne Elaine Boyer, * * *." (Emphasis ours.)

In support of their position, they cite Woolworth Co. v. Ellison, Tex.Civ.App., 232 S.W.2d 857, and Aetna Life Insurance Company v. Bulgier, Tex.Civ.App., 19 S. W.2d 821. A study of these cases failed to reveal any analogy between issues there and those under consideration here.

In fact, Special Issue No. 65 does not even by inference call upon the jury to determine the question of whether or not the negligence of the appellee was a proximate cause *"of the"* death of Daphne Edith Boyer. It assumes it. It simply asked the jury to find "What sum of money * * * would fairly compensate plaintiffs for the loss, if any, sustained by them as a direct and proximate result of the negligence of the defendant, if any,

*and* death of Daphne Edith Boyer * * *." (Emphases ours.)

We, therefore, overrule appellants' contention that Special Issue No. 65 was a finding by the jury that appellee's negligence as found in response to Special Issues Nos. 30 and 31 was a proximate cause of the death of Daphne Edith Boyer. Since the jury did not answer Special Issue No. 32, appellants failed to establish their case. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985; Dunn v. Texas Coca Cola Bottling Co., Tex.Civ.App., 84 S.W.2d 545, writ dismissed.

■ The judgment of the trial court should be affirmed for an additional reason. When appellants waived their right to have the jury further consider the verdict, with Special Issue No. 32 unanswered, and the Court subsequently rendered judgment in favor of the appellee denying a recovery by appellants, under Rule 279, T.R.C.P., it will be presumed that the trial court found appellee's negligence was not a proximate cause of the death of Daphne Edith Boyer. This conclusion is supported by Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, where an erroneous predicate on the proximate cause issue following a double submission of a "failure to keep a proper lookout" issue caused the jury to not answer the proximate cause issue, and no objection having been made to the Court's submitting the issue in that form or to the Court's receiving the verdict without the Issue being answered, it was held that the burden rested upon the defendant to obtain a jury finding in its favor on that Issue to establish its defense and not having done so it "waived its right to a jury issue on the unanswered Issue on proximate cause and this answer must be taken as having been answered by the Court in such manner as to support the judgment."

A number of cases were cited in the Supreme Court's opinion where the rule has been applied to the plaintiff as well as

the defendant. We cannot see where any distinction can be made in the application of the rule.

The judgment of the trial court, therefore, should be affirmed.

WERLEIN, J., not sitting.