MABEL L. GRISWOLD *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    March 4, 1903. — May 23, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Negligence,* As to trespasser, or licensee. *Railroad.*

A girl nineteen years old was walking on the land of a railroad company at the side of two tracks with a beaten path between them. She started to cross one of the tracks to the path, and as she did so turned and saw an engine which she thought was backing down on the other track. When between the rails, some one shouted to her and looking up she saw the engine backing down on the track she was crossing. In her efforts to get over the track she fell, and being unable to move was struck by the rear truck of the tender and injured. There was time for her to have crossed the track if she had not fallen. Evidence was admitted that persons in that part of the town were in the habit of using the railroad track as the route to reach their homes. *Held,* that, assuming that the evidence last mentioned was admissible, it only changed the status of the injured person from that of a trespasser to that of a bare licensee, to whom the railroad company owed no duty but that of refraining from wilfully or wantonly running her down, of which there was no evidence.

Where a girl, who at most was a bare licensee on the track of a railroad company, was run into owing to no fault of the company and was lying screaming under the rear truck of the tender of an engine, in determining whether the railroad company did everything that reasonably could be done to extricate the girl from her position as soon as possible, it is proper to regard not only what it appeared afterwards would have been the best thing to do, but that which naturally would seem to be so in the hurry and excitement of the moment. Moreover the railroad company in such a case owes no legal duty to the injured person to relieve him from his plight not due to its fault, or to relieve him as soon as possible.

TORT for personal injuries from being run down by an engine and tender of the defendant while the plaintiff was walking on the track of the defendant at the Reformatory Station in Concord. Writ dated January 15, 1901.

In the Superior Court *Fox*, J. ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*T. J. Boynton*, for the plaintiff.

*F. N. Wier*, ( *G. R. Richardson* with him,) for the defendant.

LATHROP, J.   1. The plaintiff in this case was a girl nineteen years old.   On October 15, 1900, she was a passenger on a train of the defendant company from Concord to Reformatory Station, and arrived there about half past five in the afternoon.   It was then growing dark.   Instead of going to her home by the highway, she attempted to take a short cut by going over land of the defendant, on which were two tracks, with a path between the two.   One of these tracks was a spur track used for cars, and the other was a track running to the round house, where the locomotive engines were kept.   While the plaintiff was walking near the fence on the side of the track leading to the round house, the cars had been kicked off on to the side track, and the locomotive engine backed slowly down on the track towards the round house, going at the rate of four miles an hour.   The plaintiff, according to her testimony, started to cross the track to the beaten path.   As she started to cross she looked back and saw the engine, and thought it was upon the same track that the cars were on.   While she was between the rails some one shouted to her, and she looked up and saw the engine backing down on the track which she was crossing.   She did not hear either whistle or bell; and in her effort to go over the track she fell, striking on her back upon and across one of the rails of the track which she was attempting to cross, so that her head and body lay outside the rail toward the path she had started for, and her feet and legs were within the rails.   She testified that there was time for her to go over the track, but after she fell she was unable to move; and she was struck by the rear truck of the tender, and received the injuries complained of.

Evidence was admitted, against the objection of the defendant, that persons living in the part of the town towards which the plaintiff was going were in the habit of using the railroad track as the route to reach their homes.   Assuming that this evidence was admissible, it only changes the status of the plaintiff from that of a trespasser to that of a bare licensee, to whom the defendant owed no duty but that of refraining from wilfully

or wantonly running her down. We find nothing in the evidence to show that the servants of the defendant did either. So long as the plaintiff. was alongside the track, those on the engine had no reason to suppose that she would attempt to cross the track, and when she did make the attempt, she could have got safely over but for her fall. See *Byrnes* v. *Boston & Maine Railroad*, 181 Mass. 322, and cases cited.

2. The next contention is that if the defendant was not in fault in striking the plaintiff, it owed her a moral and a legal duty to release her as soon as it reasonably could, and that for the breach of this duty an action will·lie.

It appeared that as soon as the plaintiff was injured she screamed ; and one witness testified that in his judgment it was from eight to ten minutes from the time he heard the scream until the plaintiff was released. Other witnesses put the time from three to four minutes. There was expert evidence that if the plaintiff .remained unreleased for eight or ten minutes, she would have a greater shock, and the injury would be greater. Two witnesses testified to this, but neither undertook to discriminate between the injury received by the truck of the tender striking her and that caused by the delay, and we should doubt whether a distinction could be made which would even approximate to certainty.

When the accident occurred, the fireman ran to the station to notify the station master, who telephoned for a doctor. The engineer got down from his engine and looked at the girl, but did not start up his engine at once, which might not have been a prudent thing for him to do, without some one on the ground to assist the plaintiff and direct the engineer. When an emergency of this sort arises, we are of opinion that the question whether everything was done which could be reasonably done is to be determined with a certain degree of liberality, and that " we are to regard, not only that which may prove to have been necessary upon a review of the situation in cool blood, but what would naturally seem so in the hurry and excitement of the moment, when the parties had to act." *Hawks* v. *Locke*, 139 Mass. 205, 209, per Holmes, J. To the same effect are *Wynn* v. *Central Park, North & East River Railroad*, 133 N. Y. 575, and *Stabenau* v. *Atlantic Avenue Railroad*, 155 N. Y. 511.

Viewed in the light of an emergency caused by the negligence of the plaintiff, it would be difficult to hold that there was sufficient evidence to warrant a jury in finding that the defendant's servants acted unreasonably in the slight delay that took place.

But there is another view of this case which strikes at the foundation of the plaintiff's claim. Her counsel has referred us to no case which supports the proposition that if a person is injured through no fault of a railroad company, the latter owes a legal duty to the person injured to assist him. There is of course a moral duty, but in performing that duty, the company is not liable if one of its servants does not use his best judgment in affording the necessary assistance.

Many of the cases relied on by the plaintiff are those where a passenger is rightly ejected from a car, but the ejection is effected in a wrong manner. *Hudson* v. *Lynn & Boston Railroad*, 178 Mass. 64. *Conolly* v. *Crescent City Railroad*, 41 La. An. 57. *Weightman* v. *Louisville, New Orleans & Texas Railway*, 70 Miss. 563.

In *Northern Central Railway* v. *Maryland*, 29 Md. 420, much relied on by the plaintiff, there was evidence of negligence on the part of the railroad company in striking a man at a highway crossing. This being so, the duty of taking proper care of him afterwards resulted from the legal wrong done, and the case differs from the one before us, where no legal wrong was done by the defendant. See *Baltimore & Ohio Railroad* v. *State*, 41 Md. 268.

The case of *Dyche* v. *Vicksburg, Shreveport & Pacific Railroad*, 79 Miss. 361, proceeds upon the singular ground that if a railroad company, though not in fault in injuring a trespasser, assumes charge of him, there is imposed on it the duty of common humanity, and whether it has performed this duty is a question for the jury. We cannot accede to the doctrine of this case. If it is law, no humane or gratuitous act could be done without subjecting the doer of it to an action on the ground that the defendant ought to have acted more quickly or with more judgment. It is a doctrine which would allow an action against a good Samaritan and let a priest and a Levite go free.

There have been many cases in our own reports where railroads have been exonerated when an injury has been inflicted

upon a trespasser, but in no case before has it been suggested that a slight delay in assisting a trespasser gave a right of action, or, to go further, that there was any legal duty to give such assistance, although we have no doubt that such assistance has always been rendered.

*Exceptions overruled.*