Joyce Savannah **RAINS** et al., Appellants,

v.

**HELDENFELS BROTHERS** et al., Appellees.

No. 231.

Court of Civil Appeals of Texas.

Corpus Christi.

March 27, 1969.

Rehearing Denied July 10, 1969.

**282**

Carter, Stiernberg, Skaggs & Koppel, Jack Skaggs, Rollins M. Koppel, Harlingen, for appellants.

Adams, Graham, Lewis & Graham, John E. Lewis, Harlingen, Graves, Dougherty, Gee, Hearon, Moody & Garwood, Dan Moody, Jr., Austin, for appellees.

## OPINION

GREEN, Chief Justice.

The appellants herein, plaintiffs below, are Joyce Savannah Rains individually and as next friend for her minor children, Katherine Joan Rains, Linda Ann Rains, Bertram M. Rains, Jr., Ronald Lee Rains and Richard Darrell Rains. The appellees, defendants below, are Heldenfels Brothers, a partnership, and F. W. Heldenfels, F. W. Heldenfels, Jr., H. C. Heldenfels, and J. R. Heldenfels, the individual members thereof, and also James B. Nelms, who was an employee of Heldenfels Brothers.

This is an action for damages under the Texas Death Statute, Art. 4671, Vernon's Ann.Tex.St., brought by appellants for the death of Bertram M. Rains, the husband of appellant Joyce Savannah Rains and the father of the minor appellants. On January 1, 1964, an automobile being driven by Rains was in a collision with a piece of road machinery styled in the record a *Tournapull* which belonged to Heldenfels Brothers, and which was being operated by their employee James B. Nelms. Rains died within less than an hour after the collision from injuries received as a result thereof. A trial before a jury resulted in a verdict upon which both sides claimed to be entitled to judgment. The trial court entered a take-nothing decree.

At or about 7:30 on the morning of January 1, 1964, Bertram M. Rains, after being on night duty as clerk at a hotel in Raymondville, Texas, was driving his car in an easterly direction on State Highway No. 186 in Willacy County headed home. Heldenfels Brothers was engaged in performing a contract to improve this highway. Rains drove to work and back home on this road daily, and was acquainted with its condition. As he drove homeward on this occasion, he passed several signs giving notice of the construction ahead, and a number of road construction vehicles. He also passed a sign just inside the Raymondville City limits of a 45 mile per hour speed limit.

At this time, the defendant Nelms, as the employee of Heldenfels engaged in the duties of his employment, was operating a *"Tournapull"* along and across the highway about 3 miles east of the city limits of Raymondville. A Tournapull is a large machine which, with the dirt buggy attached, is about 32 feet long, and including the load weighs about 120,000 pounds. It is used to scrape dirt into the load holder and haul such dirt to where it should be dumped. It has a front projection or overhang extending forward of the two front tires of the machine. A photograph of the machine with deceased's car is made a part of this opinion. Further reference is hereafter made to this exhibit.

The work in which Nelms was engaged on the morning in question involved crossing and recrossing the road with his loaded Tournapull. Prior to and at the time of the collision in question, Nelms was seated in the driver's seat of the vehicle which was located high above the drive unit. He had been travelling along the north shoulder of the highway in a westerly direction, and as he got to the edge of an intersection of the highway and a dirt road he turned south and proceeded across the highway at a time when Rains was approaching the intersection. The pavement at this point was 18 feet wide, and the Tournapull with the dirt buggy after turning south had completely blocked the paved portion of the road and extended back to the shoulder when the collision occurred. Rains' way was thus blocked as he approached this intersection, since the south shoulder of the highway was not passable, and there was a bulldozer located on the south shoulder at the intersection. The evidence shows that his car approached this point at a speed variously estimated from a minimum of 54 miles per hour to a maximum of 80 m. p. h. He applied his brakes before the collision, but was unable to stop. His left tires left 90 feet of skid marks and his right tires left 112 feet before the impact. The car slammed into the right of the Tournapull at its front end while the latter was still moving and became jammed under the overhang by the force of the collision and the forward motion of the machine.[1] It was wedged so tightly

1. See photograph made a part of this opinion. This photograph was taken after the Tournapull had been raised off the car so that Rains could be extricated.

that the springs on the car were pushed down. The force of the impact was so great that all the upper part of the car (except the right front fender and head-light) including the left fender, firewall, dash, steering wheel and column, door post, and front seat with Rains still in it, was rammed to the rear approximately eight feet, so that Rains wound up where the back seat of his car would have normally been. As a result of the collision, the motor of the car tore loose from its moorings and was hurled six to ten feet down the highway.

Rains was still alive after the collision, although he was severely injured. He was still living when the ambulance arrived several minutes later, but could not be removed from his car until the Tournapull was moved off of it. Nelms was the only person there who knew how to operate the Tournapull, but though the ambulance driver, a first aid expert, requested and then demanded that he move the machine off the car so that Rains could be given first aid and immediately be taken to the hospital, Nelms refused to act for about 20–30 minutes, during which interval Rains died about 30–35 minutes after the ambulance arrived, and 40–45 minutes after the collision.

The jury in answering special issues numbered as follows made answers as follows, all based on a preponderance of the evidence:

(1) Immediately prior to the collision, Nelms failed to keep a proper lookout; (2) which failure was a proximate cause of the death of Rains; (3) immediately prior to the collision, Nelms turned the Tournapull south across State Highway 186; (4) at a time when deceased's vehicle was approaching so close as to constitute an immediate hazard; (5) such action was negligence; (6) and was a proximate cause of Rains' death; (7) Nelms failed to stop the Tournapull before entering the east bound lane of State Highway No. 186; (8) which failure was negligence; (9) and a proximate cause of Rains' death; (10) on the morning of and prior to the collision, Heldenfels Bros. had failed to station any person to the west of and near the place where the collision occurred to direct traffic on Highway 186; (11) which failure was negligence; (12) and a proximate cause of Rains' death; (13) that the act of Nelms in turning the Tournapull onto the highway immediately before the collision when no person was stationed to the west to direct traffic was negligence; (14) which negligence was a proximate cause of Rains' death.

Special issues 15, 16, 17, and 18, involving Nelms' failure to render reasonable assistance to Rains after the accident, will be considered under appropriate points of error in the latter portion of this opinion.

We proceed with a summation of the remainder of the verdict. (19) The driving by Rains of his automobile at a rate of speed in excess of 45 miles per hour immediately prior to the collision was negligence; (20) which negligence was a proximate cause of the collision in question; (21) Rains did not fail to keep a proper look-out immediately prior to the collision, and (22) not answered; (23) just prior to the collision in question Rains was driving his automobile at a rate of speed in excess of that which a person of ordinary prudence would have driven under the circumstances then and there existing; (24) which was a proximate cause of the collision in question; (25) at the time, place, and on the occasion in question, Rains was not driving while under the influence of intoxicating liquor; (26) not answered; (27) the collision was not the result of an unavoidable accident; (28) that immediately before the collision Felipe Garza did not give hand or arm signal that the Tournapull was crossing the highway; (29), (30), (31), (32), (33), (34) not answered.

Issue No. 35 was the damage issue "For the loss of services around the house, if any, and monetary contributions, if any, to her support from his earnings, if any, which Joyce Savannah Rains, the surviving wife

of Bertram M. Rains, in reasonable probability would have received from her husband during his lifetime had he not lost his life" and limited thereto, the jury found damages in the sum of $87,500.00. "For the loss of monetary contributions for the support, if any, and maintenance, if any, which each of the following children of Bertram M. Rains, in reasonable probability would have received from the said Bertram M. Rains from the time of his death until each such child became 21 years of age, if Bertram M. Rains had not lost his life" the jury found damages as follows:

| | | |
|---|---|---|
| 1. | Katherine Joan Rains: | $6000.00 |
| 2. | Linda Ann Rains: | 6600.00 |
| 3. | Bertram M. Rains, Jr.: | 7200.00 |
| 4. | Ronald Lee Rains: | 9000.00 |
| 5. | Richard Darrell Rains: | 11400.00 |
| | | $40,200.00 Total |

———◆———

Although the question was submitted, the jury found no damages for the widow or the children for loss of care, if any, counsel, if any, and guidance, if any. No recovery for any other items of damages, such as pain and suffering and medical and funeral expenses, were sought by appellants.

The appellees filed a motion to set aside the jury findings relating to Nelms' failure to render aid *after* the collision, (special issues Nos. 15, 16, 17, and 18 infra) and moved the court to render judgment for defendants notwithstanding the jury's answers to such issues. Appellants filed their motion for judgment on the verdict, and a subsequent motion that the court disregard the jury's answers to issues 19, 20, 23, and 24 (the contributory negligence issues found against Rains). All of these motions were overruled by the trial court, and judgment on the verdict was rendered that the plaintiffs take nothing. Plaintiffs' amended motion for a new trial, timely filed, was overruled by the trial court, and this appeal followed:

Appellants' points of error may be separated into two main divisions: those concerning (1) the actions of Rains and Nelms and the findings of the jury as to such actions, prior to the collision; and (2) the events with reference to Nelms' alleged failure to render reasonable assistance to Rains, and the findings of the jury thereon, after the collision. We shall disregard the sequence of these two divisions as contained in appellants' brief, and consider them in the order stated above.

As noted above, the jury found the defendants (appellees) guilty of a number of acts of negligence proximately causing the death of Rains. Appellees on this appeal have no quarrel with any of these findings (excluding of course those concerning failure to render assistance). The jury found deceased Rains to have been guilty of negligence proximately causing the collision in question (issues 19, 20, 23, 24 on speed.) By the following points of error, appellants attack the submission of such issues, the findings of the jury, and the admission of allegedly improper prejudicial evidence.

■ Appellants' third point of error raises the contention that the jury's answers to issues 19, 20, 23, and 24 are immaterial and not legally defensive because as framed the issues did not inquire whether such negligence was a proximate cause of the *death* of Rains, but only of the *collision,* and because appellees failed to secure a jury finding that the contributory negligence proximately caused Rains' *death.* We overrule this point. There is no actual controversy here over the fact that Rains died as the result of injuries received in this collision. There is dispute, which will be considered under other points of error,

whether he would have died from such injuries had he received prompt first aid and medical treatment. However, plaintiffs judicially admitted in court by the allegations of their trial petition (3rd amended) that "Bertram M. Rains' automobile * * * collided with the tournapull * * * demolishing said automobile and causing personal injuries to Bertram M. Rains from which he later died, as hereinafter more fully set out." Rose v. Baker, 138 Tex. 554, 160 S.W.2d 515. Following the allegations of negligence and proximate cause inquired about in special issues 1–14 inclusive, said petition alleged: "Such negligence on the part of the Defendant Nelms was a proximate cause of the collision in question, the injuries to Bertram M. Rains, his subsequent death, and the damages sustained by the Plaintiff herein as alleged below." The pleadings and evidence established that Rains died as a result of injuries received in the collision, and under the facts of this case, a finding that the negligent speed at which Rains was driving was a proximate cause of the collision is equivalent to a finding that same was *a* proximate cause of Rains' death.

Appellants' 4th to 12th points of error inclusive concern the 45 mile per hour speed inquired about in special issues 19 and 20. Appellants' evidence established that prior to the collision when deceased first applied his brakes he was driving in excess of 45 miles per hour. Appellants introduced the first testimony of a 45 mile per hour speed limit when they placed in evidence their exhibit 11 showing the 45 m. p. h. sign on this highway inside the city limits and the city ordinance setting the speed limit within the city of 45 m. p. h. Thereafter, over appellants' objection, appellees were permitted to introduce Highway Commission minute order setting the maximum, reasonable and prudent speed limit on this section of the highway under construction from the east city limits of Raymondville to the end of the project at 45 m. p. h., together with evidence of another 45 m. p. h. sign at the eastern end of the section under construction, on beyond the site of the collision. We feel that the court properly admitted this order under the provisions of Secs. 166, 167, Art. 6701d, V.A.T.S.

■ Appellants among other attacks on this order from the Highway Department minutes contend that its admission in evidence attempted to set a "maximum, reasonable and prudent speed limit" on this section of highway at 45 m. p. h., whereas the Highway Department's only authority under Sec. 167, Art. 6701d was to set a prima facie maximum speed limit and that the introduction of this order from the Department's minutes told the jury that the maximum reasonable or safe speed was 45 m. p. h. We do not agree. Sec. 166 of Art. 6701d relating to speed restrictions is entitled "Maximum Speeds of Vehicles", and the last sentence in Sec. 166(a) provides that "the maximum speed limits set forth in this Section may be altered as authorized in Sections 167, 168, and 169." The order of the Department must be considered in the light of the statute to refer only to a prima facie speed limit, and was so considered by the trial court. It will be noted that the court did not assume as a matter of law that driving over 45 m. p. h. was negligence; this issue was submitted to the jury for their decision.

■ The jury also found (issues 23 and 24) that Rains was driving at a rate of speed in excess of that which was reasonable and prudent under the circumstances then and there existing, and that such driving was a proximate cause of the collision. Appellants by appropriate points (14, 15, 16) raise the points of legal and factual insufficiency of the evidence to support such findings, as they do also of the answers to issues 19 and 20 (points of error 9, 10, 11, 12). We have considered all of the evidence in the record on these points, and have already stated portions of such evidence, and we find such jury answers to be supported by the evidence both legally and factually. Special issues 23 and 24 are not in any way related to any 45 m. p. h. speed limit, and if error was committed in admitting the minute record, or in sub-

mitting issues 19 and 20, such error would not be reversible in view of the answers to 23 and 24.

We have carefully considered all of appellants' points 4 to 16 inclusive, and find no reversible error. Same are overruled.

■ The trial court correctly refused to admit in evidence the contract between Heldenfels Brothers and the State of Texas, and in sustaining appellees' exceptions to pleadings of such contract, and in refusing to submit appellants' requested issues 8a, 8b, and 8c, and 9a and 9b, all relating to certain provisions of such contract. The standard of care or duty owed by Heldenfels was that of an ordinarily prudent person, and the provisions of such contract setting out certain terms with regard to barricades, and danger, warning and detour signs, and furnishing flagmen, were immaterial and prejudicial and were not admissible to establish a guide in the determination of negligence or proper conduct. Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806.

■ Also, the jury found all submitted issues of primary negligence of appellee-defendants and proximate cause against them and favorable to appellants-plaintiffs and the failure to submit additional negligence issues could not be prejudicial to appellants.

Appellants' points of error 17–20 inclusive alleging prejudicial error as to the above matters are overruled.

■ Appellants contend by their 23rd point that the court erred in submitting special issue No. 25 inquiring as to whether deceased was driving while intoxicated and issue 26 being the proximate cause issue. Since the jury answered favorable to appellants that Rains was not intoxicated, error, if any (which we do not find), would be immaterial and not reversible. Rule 434, Texas Rules of Civil Procedure Points of error Nos. 21 and 22, complaining of the admission of certain items of evidence of intoxication are overruled as

being without merit. Cloud v. Zellers, Tex.Sup.Ct., supra, syl. 2–3; Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191.

## FAILURE TO RENDER REASONABLE ASSISTANCE

Appellants' 1st and 2nd points of error concern their contention that regardless of any findings by the jury of contributory negligence, a new cause of action accrued after the collision. Such points read:

"POINT OF ERROR NO. 1:

(Germane to Paragraphs 1, 2, 3 and 4, *Plaintiffs' Amended Motion for New Trial, Tr. 166*)

"The trial Court erred in overruling Plaintiffs' motion for judgment on the verdict against James B. Nelms because the jury found that after the collision in question, Nelms failed to render reasonable assistance to Bertram M. Rains, and that such failure was a proximate cause of Rains' death; and where Nelms knew that by his conduct, whether tortious or innocent, he had caused such bodily harm to Rains as to make him helpless and in danger of dying if he did not receive aid, Nelms was under a duty to exercise reasonable care to prevent Rains' death without regard to whether or not Rains had originally been contributorily negligent *prior* to the collision.

"POINT OF ERROR NO. 2:

(Germane to Paragraphs 1, 2, 3 and 4, *Plaintiff's Amended Motion for New Trial, Tr. 166*)

The trial Court erred in overruling Plaintiffs' motion for judgment on the verdict against Heldenfels Brothers, a partnership, and the individual members of such partnership, because the jury found that the failure of Nelms to render reasonable assistance to Rains occurred in the scope of Nelms' employment for Heldenfels Brothers, and such

failure was a proximate cause of Rains' death."

Appellees responded with reply points stating that the trial court properly rendered judgment for defendants because Nelms was under no legal duty to render assistance to Rains; the contributory negligence of deceased as found by the jury was a complete defense to all recovery sought by plaintiffs; that the negligent rate of speed of Rains was a proximate cause of his death; that plaintiffs failed to allege, prove, or secure a jury finding that any "further harm" was sustained by reason of Nelms' alleged failure to render assistance to Rains; that there was no evidence that Nelms was acting within the scope of his employment in failing to render assistance to Rains; that if Heldenfels had a legal duty to render assistance to Rains, which was denied, such duty was fulfilled by the actions of their other employees on the scene, and that the evidence of Nelms' failure is insufficient legally and factually to support any judgment against Heldenfels. Appellees also contend by what they designate as cross-assignments that the jury findings as to issues 15, 16, 17, and 18 are not supported legally or factually by the evidence; and other matters which will be determined by the Court.

After the collision, Nelms stopped the Tournapull which had been crossing the road at a slow speed estimated at 1–3 m. p. m., looked down from the driver's seat, and discovered a car under the front of the machine with a man in it. According to him, he did not go to the car until the ambulance arrived, but got off the machine and laid down on the shoulder of the road. In the meantime others present, including some Heldenfels employees realized that the man in the trapped car (Rains) needed help. One, noting Rains laboring for breath with blood gurgling from his nose got in a pick-up and went to call an ambulance from Raymondville. Another got some rags and leaned across the trunk of the car (they could not enter the car from the front or side) through the back window and tried to mop the blood from Rains' nose. He could hear Rains gurgling. An ambulance arrived at approximately 7:40 A.M., variously estimated from 10–15 minutes after the collision.

The ambulance driver, James Duddleston, was through years of training and experience qualified as an expert in rendering first aid and emergency treatment to accident victims. According to his testimony and that of others, Rains and the front seat had been pushed back into the rear seat position of the car by the force of the collision. Due to the pressure of the front projection of the Tournapull, it was impossible to get to Rains to render treatment or get him out of the car without moving the Tournapull. Rains was in a sitting position in the rear of the car with his head so situated that blood from the cut on his nose was running into his mouth. Duddleston was able to take Rains' pulse by reaching thru the back window and "feeling his neck" and he had a "rather rapid rate of pulse." The witness testified he found Rains' breathing was "about 12 times per minute" which was a "little below normal." He had a deep laceration through the bridge of his nose and was bleeding. Most of the blood was going down his throat. Duddleston believed this created a danger. Rains was gurgling and having difficulty in breathing. Duddleston could reach him thru the rear-window, but "couldn't get around in front of the man to find out if he had swallowed his tongue." He could see blood coming from Rains' mouth and down his face. He concluded that Rains was "suffocating from air-way obstruction." By air-way he meant the "air passage to his lungs" and said that "a person will drown—if they have a fluid, he will drown in their own blood or suffocate."

There was much discussion in the record concerning the attempts by Duddleston and others present to persuade Nelms to raise the Tournapull off the car so that

emergency treatment could be rendered to Rains, and he be carried to a hospital. The evidence showed that the machine was so constructed that the drive unit, including the front wheels and the overhang projecting forward of these wheels, could be jacked up hydraulically completely off the ground. Nelms was the only person present who could operate this machine; however, he refused to raise it off the car or move it until it was too late to save Rains' life. As to his efforts to secure Nelms to move the Tournapull, Duddleston testified:

"A. I asked Mr. Nelms if they could move the machine up off the car whereby that we could remove Mr. Rains and give him first-aid or take him to the hospital for treatment.

His answer was, 'Hell, no, I cannot move the damn machine until the law gets here.'

And I said, 'In other words, you mean to tell me that you will not remove that machine whereby that I can take him to the hospital where he can be treated?'

He said, 'I'm sorry, but I cannot move the machine until the law gets here or my foreman comes up and tells me to move it.'

And I went back over and checked Rains two or three times in the interval until I was walking back towards my ambulance, and Mr. Nelms and a Mr. Garfield arrived upon the scene, and he told me then that was his foreman coming, and Nelms went to Mr. Garfield.

I was beside of him, and he told Garfield that he would not move the machine until the law gets here, and Mr. Garfield says, 'That's right, we cannot move the machine until some of the law gets here.' And I say, 'Well, there's a man alive there and he needs first-aid and medical treatment. You mean to tell me that you will possibly let a man die for lack of medical treatment?'

He said, 'I'm sorry, we cannot move the machine until the law gets here unless you want to take the responsibility of it.'

And I said, 'If it is the law you have got to have, I can get the law out here.'

And Mr. Garfield did tell me that the Highway Patrol was en route from Harlingen.

I said, 'Well, that will take about twenty minutes or twenty-five minutes more for them to arrive at the scene of the accident. Would any law do?'

He said, 'Well, any law that would tell us to move the machine.'

I says, 'Well, I can get one on my radio. I will call in and have one to come out from the City or County.'

And he said, 'Yes, that would be all right if they will tell us to move the machine.' "

Shortly thereafter, Duddleston, the ambulance driver, agreed to assume full legal responsibility, and Nelms consented to lift the machine off the car. However, by the time Duddleston was able to get to Rains, the latter had died. According to Duddleston, Rains lived for about 30–35 minutes after the ambulance arrived on the scene.

Before the car was moved from under the machine, Duddleston could get his arm in the car, but could not get inside and check Rains' mouth. He couldn't lay him down, and in the position Rains was in his breathing was constricted and narrowed by about 50%. In addition, fluid had accumulated in his chest and if Duddleston could have laid him on his back and turned him on his side the fluid could

have been extracted. Duddleston testified that he could have then examined Rains to see if he had swallowed his tongue, in which latter event this could have been remedied. Other first aid and emergency treatment could have been given. Duddleston stated if Rains could have been removed when he first asked Nelms for assistance, Rains could have been gotten to a hospital in Raymondville within four or five minutes, where doctors would have been available.

Duddleston, being also the mortician, examined Rains' body at the funeral home when it was embalmed. He found the skull intact and solid, and no external evidence of trauma except for the face. He ascertained that the circulatory system was intact, with no internal leakage. Rains' left leg was broken above the ankle, and his right leg above the knee. Both arms were broken between the elbow and the shoulder. From his education, training and experience, and based on his observation and handling of Rains, Duddleston expressed the opinion that Rains "died from suffocation and strangulation," and that "he would have had a better chance to live had he had first aid" and "been able to bring him to a hospital whereby he could have received treatment."

There was other testimony from witnesses who were present and attempting to render assistance that Rains was alive for a while after the accident and was making a deep gurgling noise as though he was attempting to breathe through the blood.

Three medical doctors, two as plaintiffs' witnesses and one as witness for defendant, testified on the issue of whether or not Rains' death was caused by the failure to secure prompt emergency aid and medical treatment. Under the circumstances, since no doctor treated Rains and there was no autopsy, it was necessary for the medical testimony to be based on answers to hypothetical questions.

Dr. Donald Heins, placed on the stand by plaintiffs, practiced medicine in Raymondville, and stated that either he or his partner Dr. Spence is always available on call, and were available on the morning of January 1, 1964. They had adequate equipment available at the hospital in Raymondville. A hypothetical question was propounded to Dr. Heins which included the known injuries suffered by Rains, the position in which he was trapped in the car, the sounds he was heard to make, the rapidity of his pulse, the bleeding into his mouth from the cut across his nose, and other facts from the testimony of the witnesses, including much of what we have heretofore detailed. The expert witness was asked to give his opinion, based on reasonable probability, as to what caused Rains' death, and he answered: "I believe he died by strangulation." He stated further that in his opinion Rains would have lived had he been given prompt first aid treatment. The witness was thereafter subjected to lengthy and detailed cross-examination on the medical basis for his testimony, but did not change his expressed opinion.

Dr. Sam Carter also testified as an expert witness called by plaintiffs. He is a specialist in chest diseases. When Rains' position and condition after the accident was described to Dr. Carter in a hypothetical question, he stated that the first step in first aid would be "to move him out of the position he was in * * * because of the respiratory airway obstruction that bleeding into the back of the throat" was causing. He said that Rains was in a "precarious state" and should have been put "in a prone position or into a position on his side to prevent gravity" from causing airway obstruction by either blood or the position of his tongue. He expressed the opinion that "the cause of death was due to suffocation, due to obstruction of the airway by blood and/or blood clots." The doctor further stated it to be his opinion, based on the facts stated to him, that had Rains been moved within five minutes after the ambulance arrived, and changed

from the position he was in, he would not have died at the time he did. He then explained why he did not believe that Rains died from causes other than the airway obstruction caused by the bleeding into the back of his throat.

Dr. Robert Jackson, placed on the stand as a medical expert by appellees, after being shown photographs of the damage to Rains' car, and being asked hypothetical questions based on the evidence of Rains' injuries and other facts in evidence described other probable injuries as the likely cause of his death. He did not believe that Rains' death was caused by the bleeding into the back of his throat, although he expressed the opinion that it was "almost surely a contributing factor but * * * from an educated guess, it was probably relatively a minor one." He agreed that a person with a head wound is not in a good position if seated with his head thrown back, and that it would have been better to have laid Rains on his side to "reverse the gravity" so blood would not be drawn into his lungs or throat.

Based in the main on the evidence summarized above, and other testimony in the record, the following special issues were submitted, and the following answers were returned by the jury:

"SPECIAL ISSUE NO. 15

Do you find from a preponderance of the evidence that after the collision in question it was apparent to James B. Nelms that medical or surgical treatment was necessary for the driver of the automobile which had collided with the tournapull?

You will answer this issue 'yes' or 'no'.

We, the Jury, answer: Yes

If you have answered the last preceding special issue 'yes', and only in that event, you will then answer the following issue:

In connection with the following issue you are instructed that by the term 'reasonable assistance' is meant the as-

sistance which would have been rendered by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances.

SPECIAL ISSUE NO. 16

Do you find from a preponderance of the evidence that after it became apparent to James B. Nelms that medical or surgical treatment was necessary for the driver of the automobile in question, if you have so found, that James B. Nelms failed to render to such driver reasonable assistance, as that term has been herein defined for you?

You will answer this issue 'yes' or 'no'.

We, the Jury, answer: Yes

If you have answered the last preceding special issue 'yes', and only in that event, you will then answer the following issue:

SPECIAL ISSUE NO. 17

Do you find from a perponderance of the evidence that such failure, if you have so found, on the part of James B. Nelms, as inquired about in the last preceding issue, was a proximate cause, as that term is hereinabove defined, of the death of Bertram M. Rains?

You will answer this issue 'yes' or 'no'.

We, the Jury, answer: Yes

If you have answered special issue No. 16 above 'yes', and only in that event, you will then answer the following issue:

SPECIAL ISSUE NO. 18

Do you find from a preponderance of the evidence that after the collision in question and before the death of Bertram M. Rains the failure, if you have so found, of James B. Nelms to render reasonable asistance to the driver of the automobile in question occurred in the furtherance of the work or business of the Defendant Heldenfels Brothers and for the accomplishment of the object for

which he was employed by such Defendant?

You will answer this issue 'yes' or 'no'.

We, the Jury, answer: Yes"

■ We are of the opinion that the evidence was sufficient, both legally and factually, to support these findings of the jury, and overrule all of appellees' reply and cross-points by which appellees contend and raise the proposition that such answers are not supported, legally or factually, by the evidence.

Appellants, in pleading their cause of action on that phase of the case dealing with the failure of Nelms to render reasonable assistance, plead a two-fold case. They alleged (1) that Nelms, acting within the scope of his employment as an agent of Heldenfels, was guilty of negligence in failing to take such action as would have been taken by a reasonably prudent person under the same or similar circumstances to extricate Rains from the automobile in which he was trapped, or to permit him to be extricated so that first aid could be rendered to him and so that he could have medical or surgical treatment; and (2) that Nelms violated Section 40, Article 6701d, V.A.T.S., requiring the driver of any vehicle involved in an accident resulting in injury to any person to render to any person so injured reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary. Plaintiff further pleaded that such treatment was immediately necessary, and that Nelms knew of such necessity, but refused to render such reasonable assistance; that Nelms was acting within the scope of his employment, and that his failure to render aid was a proximate cause of Rains' death.

Appellees argue that the provisions of Section 40, Article 6701d, V.A.T.S. are not applicable to place a statutory duty on Nelms to render "reasonable assistance" under the circumstances existing on the occasion in question, citing Section 24(d) of Art. 6701d, which reads:

"The provisions of this Act shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when travelling to and from such work."

■ While the provisions of Sec. 24 (d) may be applicable to the actions of Nelms prior to the accident itself, for at that time he was actually engaged in work upon the surface of a highway, we do not believe such section is controlling of his duty to render reasonable assistance after the accident had occurred. This phase of the case is actually another and distinct cause of action, and at the time Nelms failed to render reasonable assistance to Rains, as the jury found that he did fail in answer to special issue No. 16, Nelms was not actually engaged in work upon the surface of the highway. We do not believe that the Legislature, in enacting Sec. 24(d), intended that just because one became involved in an accident while working upon the surface of a highway, he was automatically exempt thereafter from rendering reasonable assistance as provided by Section 40. The provisions of Section 40, Article 6701d, V.A.T.S., are applicable to the present case.

But appellants under their pleadings and evidence were not limited to a dependance on Sec. 40 of Art. 6701d. The proposition of law contained in their first point of error is taken almost veratim from the American Law Institute Restatement of the Law Torts, Second Edition, Section 322, where it is stated:

"If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the

actor is under a duty to exercise reasonable care to prevent such further harm."

We do not have to speculate on what Nelms' duty would have been if he had been innocent of tortious conduct in causing the original body harm to Rains. The jury found Nelms guilty of tortious conduct proximately causing Rains' death in four respects (see answers to special issues, Nos. 1–9; 13–14). The jury also found Heldenfels guilty of negligence proximately causing Rains' death, not only under the doctrine of respondeat superior, but also for failing to properly station a watchman. (Special issues 10, 11, and 12, supra).

The Restatement, Section 322, goes on to say:

"d. Effect of other's contributory negligence. The liability which this Section recognizes is not imposed as a penalty for the actor's original misconduct, but for a breach of a separate duty to aid and protect the other after his helpless condition caused by the actor's misconduct is or should be known. It is therefore immaterial that the accident which rendered the other helpless to care for himself was caused by his own contributory negligence as well as by the actor's misconduct, so that he cannot recover for the original injury, nor, apart from the duty stated in this Section, for any further harm which he suffers in consequence of it, although the actor's tortious conduct was undoubtedly the legal cause thereof.

Illustration:

4. A and B are both driving carelessly along a lonely ill-lighted road. In consequence, a collision occurs by which B is thrown out of the car into the middle of the road, bleeding profusely and unconscious. A drives on without giving B any attention. A could easily have checked the flow of blood by applying a tourniquet. His failure to do so results in B's death. A is subject to liability under a death statute.

e. The rule stated in this Section expresses a duty of affirmative action imposed upon the actor because his tortious or innocent conduct has rendered the other helpless. The rule is not an extension of the principle of 'legal cause' nor an extension of the doctrine of 'last clear chance.' "

In our opinion, the evidence established as a proven fact that after the collision Rains was in need of medical or surgical treatment. As heretofore shown, the jury found in answer to special issues Nos. 15, 16, and 17, that (15) after the collision it was apparent to Nelms that Rains needed medical or surgical treatment; (16) after this became apparent to Nelms, he failed to exercise ordinary care by rendering reasonable assistance (see definition preceding special issue 16); (17) such failure was a proximate cause of Rains' death.

In Boyer v. Gulf, Colorado & Santa Fe Railway Co., Tex.Civ.App., 306 S.W.2d 215, 80 A.L.R.2d 287, wr.ref. n. r. e., the Court discussed the duty of one who has caused injury to another to render reasonable assistance as set forth in the Restatement, supra, and Art. 1150 of the Texas Penal Code, the provisions of which are now covered by Art. 6701d, Sec. 40.[2] The Court in *Boyer* considered the opinions of the California Supreme Court in Brooks v. E. J. Willig Truck Transportation Company, 40 Cal.2d 669, 255 P.2d 802, 808, and Summers v. Dominguez, 29 Cal.App.2d 308, 84 P.2d 237, 239, and after discussing said decisions in some detail, stated:

"These authorities, however, we believe, lend support to appellants' contention that a violation of Article 1150 of the Penal Code of Texas gives rise to an action in tort, * * *."

2. After the decision in *Boyer*, the Texas Court of Criminal Appeals, in Redding v. State, 166 Tex.Cr.R. 517, 316 S.W.2d 724, held that P.C. Art. 1150 was superseded and repealed in so far as it was in conflict with Secs. 38, 39, 40, Art. 6701d, Tex.Civ.Stats.

In other words, the Court concluded that there was a statutory duty requiring the railroad company's employees to render aid to Boyer. The Court was not willing to find that there was a common law duty under Sec. 322 of the Restatement to render aid since the railroad employees were found to be innocent of any tort in the original collision. However, although the jury found that the railroad company failed to render all assistance to plaintiff's wife, and that such failure was negligence, the Court affirmed a judgment for the railroad because the jury failed to answer the proximate cause issue, and such verdict was received by the Court without objection. The Court of Civil Appeals held that it must presume that the trial court found that such negligence was not a proximate cause of the injuries suffered, citing Little Rock Furniture Manufacturing Company v. Dunn, 148 Tex. 197, 222 S.W.2d 985.

Although much of the discussion in *Boyer* is necessarily dicta, we feel that it correctly states the rule applicable to the facts in evidence in the present appeal both as such rule has been established by common law and statutory provisions. See the two California cases, supra; Langenstein v. Reynaud, 13 La.App. 272, 127 So. 764; L. S. Ayres & Co. v. Hicks, Appellate Court of Indiana, in Banc, 34 N.E.2d 177; Northern Central Railway Co. v. State, 1868, 29 Md. 420, 96 Am.Dec. 545. See, also, Baker v. Adkins, Tex.Civ.App., 1925, 278 S.W. 272 wr.ref.; Atchison, T. & S. F. Ry. Co. v. Hix, Tex.Civ.App., 291 S.W. 281. Annotation—Violation of Statute requiring one involved in an accident to stop and render aid as affecting civil liability 80 A.L.R.2d 299.

 We hold that under the pleadings, evidence, and jury findings, Nelms was under the legal duty, both statutory and common law, to render reasonable assistance to Rains after the collision.

Appellees argue that even if there was a legal duty on their part, enforceable in this case, to render all reasonable aid to Rains, the contributory negligence of Rains before the collision occurred constitutes a defense to this action for damages arising by reason of the breach of such legal duty. We overrule this contention. Restatement, Sec. 322, d., supra.

In Restatement of the Law on Torts, Topic 3 of the Chapter on Contributory Negligence headed WHEN NO BAR TO ACTION, it is stated:

" § 479. Last Clear Chance: Helpless Plaintiff

*A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,*

*(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and*

*(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he*

*(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or*

*(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.*"

While this is not a case of the Last Clear Chance or Discovered Peril doctrine, it is a case of a helpless person in need of assistance, rendered helpless by the combined negligence of the injured party and of Nelms, defendant Heldenfels' employee, and of Heldenfels. In our opinion, the principles of law set forth in Section 322 and 479 of the Restatement are applicable to the facts in this case.

 The negligence of the deceased prior to the collision is not a defense to the

actions and/or non-action of Nelms in failing to render reasonable assistance to Rains after the collision. See authorities cited above.

Appellees further contend that the court properly entered a take-nothing judgment because appellants "failed to allege, prove or secure a jury finding that any 'further harm' or 'further damage' was sustained by reason of Nelms' alleged failure to render assistance to Rains after the collision in question, and appellants have waived any such claimed ground of recovery." Appellees argue that at most, Section 322 of the Restatement, heretofore cited and quoted, provides that where one's conduct has injured another, he has the duty to give reasonable assistance to prevent *further* harm. Appellees state that appellants sought recovery for a single indivisible injury or "harm" and for one quantum of damages, and that in order for appellants to recover on their "second" cause of action for failure to render reasonable assistance, they would have had to get a jury finding on this issue of "further harm".

We agree that in a personal injury case where a party is injured, and thereafter suffers additional injuries *less than death* through negligence of the defendant in failing to furnish reasonable assistance under circumstances where he is under a legal duty to do so, and where the issue of damages is on that portion of the case concerning such failure to render aid, the issue of *further harm* would be most important. The defendant would be liable only for those further damages chargeable to his failure to render needed assistance. L.S. Ayres & Co. v. Hicks, Ind.Sup.Ct., 40 N.E. 2d 334; Griswold v. Boston & M. R. R., 183 Mass. 434, 67 N.E. 354; Frederick v. Philadelphia Rapid Transit Co., 337 Pa. 136, 10 A.2d 576; Connelly v. Kaufmann & Baer Co., 349 Pa. 261, 37 A.2d 125, 152 A. L.R. 555.

In the present case, appellants sued under the Texas Death Statute for damages for the *death* of Mrs. Rains' husband and the childrens' father. The jury found that such death was proximately caused by Nelms' failure to render reasonable assistance. Although the jury found other acts of negligence to have also been a proximate cause of the death, it is well established that there can be more than one proximate cause of an event. The court defined "proximate cause" as "that cause which, in its natural and continuous sequence, produced the result complained of, *and without which said result would not have occurred, * * * 3"* Under such definition, the jury found that Rains' death, the result complained of, would not have occurred without this specific cause, i.e., Nelms' failure to render reasonable assistance. We know of no way to apportion between proximate causes the damages due to *death,* and have been cited to no cases where that has been done. While there may be various injuries, and damages incident to each injury, there is only one death. See Sciandra v. Shovlin, 418 Pa. 378, 211 A.2d 437.

We quote as follows from Louisiana & A. Ry. Co. v. Chapin, Tex.Civ.App., 225 S.W.2d 614, 616 wr.ref.:

"The statute in such cases provides that for wrongful injuries resulting in death 'the jury may give such damages as they think proportionate to the injury resulting from such death.' Art. 4677, R.S. The difficulties of proof in such matters are well known to the legal profession. No rule is prescribed for making the calculations. Exact ascertainment is obviously not possible. Juries from their own knowledge, experience and sense of justice are called upon to fix the compensation with reference as far as possible to conditions existing at the time of death * * *."

We have heretofore set forth much of the testimony relative to the issue of whether Nelms' failure to render reason-

---

3. Emphasis added.

able assistance was a proximate cause of Rains' death, and have found that the affirmative answer of the jury is supported, legally and factually, by the evidence. We hold that the requirement of showing "further harm" was satisfied by appellants. Such "further harm" was the death of Bertram Rains.

Appellees further argue that the trial court rendered a proper judgment for Heldenfels because (1) there was no evidence to support the jury's answer to Issue 18, to the effect that the failure of Nelms to render reasonable assistance occurred in the furtherance of the work or business of his employer, and for the accomplishment of the object for which he was employed; (2) that there was no allegation that the duty of giving aid was owed by the employer; (3) that other employees had rendered all assistance to the injured Rains, and (4) that issue 18 was not in the terms alleged by appellant, in that it did not specify what assistance Nelms should have rendered, i.e., by lifting the Tournapull off the car so that first aid could be timely given.

It is true that a number of Heldenfels' employees did what they could to render assistance to Rains before he died. But Nelms was the only employee present who could do what the testimony clearly showed had to be done to remove the Tournapull off the car so that necessary first aid could be rendered to Rains, and so that he could be taken to secure necessary medical aid. There was no other way indicated in the evidence whereby Nelms could have been of any material assistance to Rains. The thing he was able to do, and which he refused to do until it was too late, was to jack the Tournapull off the car. Nelms testified that his response to Duddleston's urgent insistence was to refuse, and to ask whether Duddleston had authority to make the demand, or whether he was just a "big mouth ambulance driver."

There can be no doubt that Nelms was acting within the scope of his employment up to the time of the accident. After the collision his main concern seemed to be that his boss, a Mr. Garfield, was not present to authorize him to move the machine, and that moving it would be contrary to company orders and might injure it. He stated on the occasion: "Hell no, I cannot move the machine until the law gets here," and "I'm sorry but I cannot move the machine until the law gets here or my foreman comes up and tells me to move it." His refusal to move the machine seems to have been partially based on his concern that the motor of the Tournapull would be damaged if he would attempt to operate it.

James R. Garfield was the job superintendent for Heldenfels on this highway job and was in charge of the overall work being done by his employer on this construction. He arrived at the scene a few minutes after the ambulance. When he got there, he ratified and approved of Nelms' refusal, when, upon being told by Nelms: "Jimmy, I told them I wouldn't move the machine," Garfield replied, "You did right, Nelms." A discussion then ensued as to who would take the responsibility for moving the Tournapull off the car. Although Garfield was in charge of the job, he insisted that some one else take "the responsibility for getting this man out of the car." Garfield was also concerned about doing further damage to the machine. He said that jacking it up and moving it back "could burn that motor up" and he felt that "there was some kind of possibility of hurting the machine if it was moved with the oil lines broken." He was thinking about additional damage to the machine in moving it because the equipment was under his charge and one of these machines cost "about $68,000" and repairs are expensive, and that was on his mind. Only after Duddleston stated he would take the responsibility of ordering the Tournapull moved off the car did Garfield and Nelms agree to do this. By then, it was too late— Rains died before they could get him out of the car.

We find this evidence, together with other testimony quoted earlier, to be sufficient to support the jury's answer to issue No. 18. We also hold that it was unnecessary for the issue to specify what assistance Nelms should have rendered. The entire evidence concerning assistance by him was limited to the aid which only he could give, i.e., move the Tournapull off of the car. The fact that other employees did what they could to help would not relieve either Nelms or Heldenfels as his employer in whose behalf he was acting in connection with Nelms' failure to render the indispensable thing which only he could do.

We hold that under the evidence and the verdict of the jury the trial court erred in failing to render judgment favorable to the appellants for the damages as found by the jury.

Appellees, in addition to their reply points directed at appellants' points of error, have filed Cross-Assignments of Error Nos. A to Q inclusive. Some of these question the sufficiency of the evidence to support the answers returned to special issues 15 to 18 inclusive. These cross-assignments have been overruled by us. Others are based on objections they made during the trial to both form and substance of issues 15, 16, 17, and 18. We have given thorough consideration to these cross-points, and believe them to be without merit. All of appellees' cross-assignments are overruled.

We are of the opinion that the trial court erred in overruling appellants' motion for judgment, and that under the facts and the law appellants established their right to judgment in their favor for the respective amounts as found by the jury. Accordingly, the judgment of the trial court is reversed. Judgment is here rendered that appellant Mrs. Joyce Savannah Rains individually recover judgment against Heldenfels Brothers, a partnership, and against F. W. Heldenfels, F. W. Heldenfels, Jr., H. C. Heldenfels and J. R. Heldenfels, who are the members of such partnership, and James B. Nelms, jointly and severally, for $87,500.00 together with interest thereon at the rate of 6% per annum from September 29, 1965, the date of the trial court's judgment. Carter v. McHaney, Tex.Civ. App., 373 S.W.2d 82, 85 syl. 1). Judgment is also rendered in favor of Mrs. Joyce Savannah Rains as next friend for her minor children against the same named defendants, jointly and severally, in the following sums:

1. For Katherine Joan Rains $ 6000.00
2. For Linda Ann Rains 6600.00
3. For Bertram M. Rains, Jr. 7200.00
4. For Ronald Lee Rains 9000.00
5. For Richard Darrell Rains 11400.00

Together with interest at the rate of 6% per annum from September 29, 1965, until paid.

All court costs incurred in the trial court and on appeal are charged against appellees.

Reversed and rendered.