## LUTHER BERWICK v. THE STATE.

No. 14950. Delivered March 2, 1932.

The opinion states the case.

*S. B. Ehrenwerth,* of Houston, *J. W. Williams* and *E. B. Lamson,* both of Port Arthur, and *Howth, Adams & Hart,* of Beaumont, for appellant.

*O'Brien Stevens,* Crim. District Attorney, and *E. T. Branch,* both of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for twenty years.

The case was tried in Harris county on a change of venue from Jefferson county.

Appellant shot and killed Belle Crowe and William A. Byrd. He was charged in separate indictments with these killings. Upon a trial for the killing of Byrd, appellant was convicted and his punishment assessed at death. Upon appeal to this court, the judgment was reversed.

See Berwick v. State, 116 Texas Crim. Rep., 508, 31 S. W. (2d) 665. Thereafter, upon a second trial for the murder of Byrd, appellant was convicted and assessed a penalty of three years confinement in the penitentiary.

The theory of the state, given support in the testimony, was that appellant's motive for the killing was jealousy. Appellant and deceased, Belle Crowe, were sweethearts. It was undisputed that appellant had been expecting to marry deceased. He had bought furniture for her, and on many occasions had given her presents and money. It was appellant's custom, in leaving his work at night, to pass deceased's home and blow his horn, this having been agreed upon as a goodnight signal. Appellant testified that on the night of the homicide he had been delivering some whisky to friends of his father; that on his way home he passed deceased's home for the purpose of giving his customary signal; that he unexpectedly came upon deceased and Byrd in an automobile; that deceased was in Byrd's arms. At this point we quote appellant's testimony as follows: "Belle was laying in Buck's arms, and she jumped out of his arms. It made me angry. I tore all to pieces. When I saw the girl I loved and promised to be my wife I was tore up so bad and wanted to talk, and she started to come to me. I believe I said, 'Belle I want to talk to you.' I seen Belle get out of the car and come around back of the car; when she got close to me he run in front and she grabbed him and screamed. When she stopped, she screamed, 'My God, Buck, don't do that; don't do that.' He was making an effort towards me, I could not tell; running in front of her; she grabbed him and went to screaming. Belle's excitement and Buck's movements made me think he was trying to do something. I don't know what else he was trying to do. I was so mad I went all to pieces. I jumped out and went to shooting. I got the gun from between the cushions and seat of the car. I don't know how many times I shot. I had no malice against Buck Byrd. When Buck came towards me it made me feel he was trying to do something to me or she would not have hollered like she did. I felt he was trying to do something, and I grabbed the gun. I was shooting at him, and I did not mean to shoot her."

The state's testimony was to the effect that Byrd was shot in the back, and deceased, Belle Crowe, in front. Byrd was about six or seven inches taller than Belle Crowe. Their bodies were found several feet from each other on the bridge where they were shot down. The testimony was uncontroverted that appellant fired several shots. The state took the position that from a description of the wounds and a study of their entrances and exits, it was manifest that the parties were not fatally shot by the same bullets.

Appellant filed a plea of former conviction on the theory that the killing of Byrd and deceased, Belle Crowe, constituted but one offense;

and that conviction for the murder of Byrd would preclude the state from seeking a conviction in the present case. The trial judge overruled the plea, and instructed the jury as follows: "The defendant having been convicted and sentenced on a charge of killing William A. Byrd, you are, therefore, charged that if you believe from the evidence in this case that the defendant at the time he shot and killed Belle Crowe was firing at William A. Byrd, whether in self-defense or not, then you will acquit the defendant in this case; or, if you have a reasonable doubt as to whether such be the facts, you will find the defendant not guilty."

This charge embraced the defensive theory. The court also instructed the jury affirmatively to acquit appellant if he was firing on Byrd in self-defense and unintentionally killed deceased, Belle Crowe. Appellant testified that he did not intend to kill deceased, but that he was firing on Byrd, and stated, in effect, that he believed Byrd was preparing to attack him.

In Thompson v. State, 90 Texas Crim. Rep., 222, 234 S. W., 400, 243 S. W., 848, it is shown that the accused entered a gambling house and robbed a number of parties who were present. Among those present were Barnes and Edwards. Separate indictments were returned against the accused. Prior to his trial for robbing Edwards, the accused had been convicted of the Barnes' robbery. When put on trial for the Edwards' transaction, he interposed a plea of former jeopardy, including in it as a part of the plea the indictment and judgment against him for the robbery of Barnes. This court held that there was no error in over-ruling the plea. It appears that in the trial for robbing Edwards the trial judge submitted the plea to the jury, instructing them, in substance, that if they believed the accused had theretofore been convicted of the same offense against the same person at the same time and place to acquit him. This court expressed the opinion that under the evidence the trial judge was not required to submit the plea. We quote the language of Judge Hawkins in the opinion, as follows:

"The charge complained of doubtless would not be an appropriate instruction in some cases where the issue was raised, but under the facts of this case, where many parties were robbed in one 'hold-up' we have discovered no vice in it. We do not believe the Spannell Case, 83 Texas Crim. Rep., 418, 203 S. W., 357, 2 A. L. R., 593, supports appellant's theory of former jeopardy. In that case Spannell's contention was that he was firing at Butler, his single motive and intent being to kill him, and that accused was acting in self-defense, his wife being killed by acci-dent. Having been acquitted of killing his wife on the plea that he had no intent to kill her, and was justified in shooting Butler, there was support for his contention in a subsequent trial for killing Butler that the issue had already been once tried and settled in his favor. No such contention can be logically urged in the instant case. The intent here

on the part of appellant and his coprincipals was to rob everyone whom the evidence shows they did rob. The offense was not completed as to Edwards until his robbery was effected. The evidence as to the completion of the latter offense was admissible in the trial of accused for robbing Barnes because part of the res gestae, but his conviction in the Barnes' case was in no way a bar to this prosecution."

In the present case the question for the jury was: Did appellant intend to kill deceased, Belle Crowe? The fact that he had theretofore been convicted for the murder of Byrd did not, under the facts, prevent a prosecution for killing Belle Crowe. If he intended to kill Byrd and deceased, Belle Crowe, it cannot be said that there was singleness of act and intent.

In Spannell v. State, 83 Texas Crim. Rep., 418, 203 S. W., 357, Spannell had been acquitted of killing his wife. Upon the trial for killing his wife he had testified that Major Butler assaulted him, and that several shots were fired by him at Major Butler, with no intent to injure Mrs. Spannell. Upon his trial on a separate indictment for killing Major Butler, he filed his plea of former acquittal, based·upon the proposition that the two homicides, resulting from a single act and volition, constituted but one offense. The court refused to submit the plea to the jury. This court said, in holding that the plea should have been submitted, that if the shots were fired at Major Butler only, and killed Mrs. Spannell, the accused having no intent or volition to injure her, that in order to determine whether he was guilty or innocent on his trial for the murder of his wife, it was necessary to decide whether, in shooting at Butler, he acted in self-defense, or with malice, and that the ·decision that he was innocent of the murder of his wife necessarily involved the finding that his act in firing at Butler was not such as to constitute murder. In the course of the opinion, it was said:

"It follows that, whether in shooting at Butler appellant acted with malice, or was justified, if in the same act, with no volition to injure his wife, he killed her, there could be but one offense, and the state, prosecuting under separate indictments for each of the homicides, would be concluded as to both by the judgment rendered in one of them. * * *

"Where two persons are killed or injured in one transaction, the fact that more than one shot was fired does not, as a matter of law, render it insusceptible of proof that they were both killed by one act. A series of shots may constitute one act, in a legal sense, where they are fired with one volition. In cases where two persons have been killed or wounded by a series of shots, and under the general issue of not guilty it is urged as a defense that one of the homicides or injuries resulted from shots aimed at one striking another, the issue of singleness of the act and intent bringing the double result has not been made to depend on the number of shots fired."

The holding in Spannell's case is not opposed to the conclusion that, under the record in the present case, the charge of the court hereinbefore quoted fully protected appellant's rights. There was no support for appellant's contention in a separate trial for killing deceased, Belle Crowe, that the issue had already been tried and settled against him in his trial for killing Byrd.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

Morrow, P. J., absent.