**Hubert Richard SPRADLING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1031–83.**

Court of Criminal Appeals of Texas, En Banc.

June 21, 1989.

Louis Dugas, Jr., Orange, for appellant.

William C. Wright, Dist. Atty., James O. Jenkins, Jr., Asst. Dist. Atty., Orange, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant was convicted of the offense of failure to stop and render aid pursuant to Article 6701d, Sections 38 and 40, V.A.C.S. In four intertwined grounds for review, appellant argues that the conviction violated his right to be protected against multiple prosecutions and multiple punishments for the same offense. We disagree and affirm.

On September 4, 1980, appellant, while driving his automobile, struck and killed two women walking on the shoulder of an access road. Two indictments were presented against appellant: one charging him with failure to stop and render aid to Bobbie Folks Rash and the other charging him with failure to stop and render aid to Vicki Rash Norvell. Appellant was tried and convicted under the Rash indictment. *Spradling v. State*, 628 S.W.2d 123 (Tex. App.—Beaumont 1981, pet. ref'd). The State then began prosecution under the Norvell indictment, and appellant filed a plea in bar of double jeopardy. The trial court denied appellant's plea in bar but granted a continuance of the cause pending final resolution of the question presented by appellant's plea in bar. Appellant's application for Writ of Prohibition was denied by this Court in a per curiam order handed down on June 16, 1981, and appellant was subsequently tried and convicted for failing to stop and render aid to the second pedestrian, Norvell. Affirming the conviction, the Court of Appeals below held that under Article 6701d, Sections 38 and 40, supra, the number of victims in a failure to stop and render aid situation can dictate the number of allowable trials, convictions and punishments against a defendant without violation of double jeopardy concerns. We granted appellant's petition to review four grounds: whether the decision of the Court of Appeals is in conflict with the United States Supreme Court's pronouncements on the issue of double jeopardy; whether the appeals court incorrectly applied the *Blockburger* test to this case; whether the appeals court incorrectly concluded that the number of victims can dictate the number of allowable trials, convictions and punishment; and whether that court erred in presuming the intent of the Legislature in enacting Article 6701d, Sections 38 and 40, supra. In light of the fact that appellant's grounds of review were argued together and may easily be consolidated for pur-

poses of review, we will discuss these grounds together.

Article 6701d, Sections 38 and 40, V.A.C.S., reads as follows:

"Sec. 38. (a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 40. Every such stop shall be made without obstructing traffic more than is necessary.

(b) Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment in the penitentiary not to exceed five (5) years or in jail not exceeding one (1) year or by fine not exceeding Five Thousand ($5,000.00) Dollars, or by both such fine and imprisonment.

"Sec. 40. The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and the name of his motor vehicle liability insurer, and shall upon request and if available exhibit his operator's, commercial operator's, or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle colliding with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

A person is defined in V.T.C.A., Penal Code, Section 1.07(a)(27), as follows:

" 'Person' means an individual, corporation, or association."

An individual is defined in Section 1.07(a)(17):

" 'Individual' means a human being who has been born and is alive."

Appellant argues that his striking and failing to render aid to the two women was but a single act or occurrence, and that his first trial and conviction for the offense barred subsequent prosecution under the rationale of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Appellant specifically claims that the Court of Appeals improperly applied *Blockburger* and that the cases better suited to this issue are *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), and *United States v. Deaton,* 468 F.2d 541 (5th Cir.1972), *cert. denied,* 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973).

We agree that the *Blockburger* doctrine is not precisely applicable to the case at bar. But, as the cases relied upon by appellant were not based upon the jeopardy clause of the United States Constitution, they are of small assistance. In any event, this Court is not bound by the federal pronouncements of the legislative intent as to federal statutes since appellant was convicted under a state statute.

*Blockburger,* however, is instructive on the matter of restrictions to application of the double jeopardy doctrine. As the Supreme Court noted in its decision, the double jeopardy clause of the Fifth Amendment does not restrict a legislature from carving out as many offenses as it chooses from one transaction so long as each offense requires "proof of a fact which the other does not." *Blockburger,* supra. The prohibition against double jeopardy applies only where "any person be subject for the *same offense* to be twice put in jeopardy...." United States Constitution, Amendment V. In *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1982), we adopted the *Blockburger* standard and noted the one act or transaction versus one offense distinction:

"... The constitutional provisions speak of double jeopardy in terms of the

'same offense' rather than 'same transaction' ..." 634 S.W.2d 823.

■■■ This Court has recognized that the protection against double jeopardy is inapplicable where separate and distinct offenses occur during the same transaction. *Jones v. State*, 514 S.W.2d 255 (Tex.Cr. App.1974); *Ward v. State*, 185 S.W.2d 577 (Tex.Cr.App.1945).

Prior cases have also held, where there are two victims, a separate victim for each offense, the acts, though occurring at the same time and place, constitute separate offenses involving separate issues of law, and separate prosecutions are not barred by former jeopardy. See generally 21 Tex. Jur.3d, Criminal Law, Section 1654, and cases cited therein. We have approached the issue of whether particular conduct constitutes separate and distinct offenses by examining the applicable statutory language. *Jones v. State*, supra.

In a recent case, this Court addressed the issue at bar: when a defendant may be twice tried and convicted for twice violating the same statute. The majority in *Ex parte Rathmell*, 717 S.W.2d 33 (Tex.Cr. App.1986), was concerned with a second prosecution for involuntary manslaughter under V.T.C.A., Penal Code, Section 19.-05(a)(2), the prior proceeding having resulted in conviction of the defendant for the death of a different victim. Directing its attention to the question of legislative intent in enacting that statute, the Court noted:

"It is clear from the language of (these statutes) that the Legislature has determined and intends that the offense of involuntary manslaughter [as defined in Section 19.05(a)(2) ] is completed with the death of a single individual. Whether the other death in question occurred prior to, contemporaneously with, or subsequent to the death for which the appellant was first tried is of no consequence. Each individual death constitutes a complete and distinct offense ... and as such each death constituted a separate 'allowable unit of prosecution.'" *Rathmell*, supra, citing *Sanabria v. United States*,

437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

The Legislature has the power to establish and define crimes. "Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses." *Sanabria v. United States*, supra, citing *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). It is universally accepted that when a defendant, by a single physical act, assaults or kills two or more persons, the Double Jeopardy Clause does not bar separate prosecutions for each victim assaulted or killed. See generally ANNOT. *Single Act Affecting Multiple Victims as Constituting Multiple Assaults or Homicides*, 8 A.L.R. 4th 960, 964 (1981). This is the current rule in Texas. *Ex parte Rathmell*, supra; *Hester v. State*, 544 S.W.2d 129 (Tex.Cr.App.1976); *Alsup v. State*, 120 Tex.Crim. 310, 49 S.W.2d 749 (1932); *Berwick v. State*, 120 Tex.Crim. 322, 47 S.W.2d 322 (1932). Therefore, if the Legislature desired to establish separate and distinct crimes for the failure to render aid to each individual in need of such aid, neither the Federal nor State Constitution would prevent the State from prosecuting for each offense. That is, "once the Legislature has defined a statutory offense by the 'allowable unit of prosecution,' that proscription determines the scope of protection afforded by a prior conviction or acquittal." *Sanabria*, 437 U.S. at 70–71, 98 S.Ct. at 2182–83 (citations omitted).

In short, whether appellant's particular course of conduct involved one or more distinct "offenses" under Article 6701d, Section 40, V.A.C.S., depends entirely on legislative intent and not on principles of double jeopardy. As such, the only issue before this Court is whether the Legislature intended that when a hit-and-run driver fails to render aid to each victim involved in an accident, prosecution can be had for each unaided victim.

The wording of Section 40 is unambiguous. It requires that a person involved in an accident "render to *any* person injured in such accident reasonable assistance." (Emphasis added.) Thus, one must render

assistance to all injured persons at the scene. One who renders aid to only a proportion of the injured persons is still exposed to liability under the section.

We agree with the Wisconsin Appeals Court when, addressing the same issue, it determined that multiple prosecutions under that State's hit-and-run statute were proper. The court wrote:

"[W]e note that the [hit-and-run] statute requires one to render assistance to 'any person injured.' This phrase has been interpreted to mean that one must render assistance to all injured persons at the scene. Therefore, a person who renders aid to three out of four injured persons is still exposed to liability under the statute....

"The penalty statute refers to the injuries or death of 'a person' or 'the person.' Multiple victim accidents are not so rare that we can say the legislature did not take them into consideration when drafting the statute. Had the legislature intended that only one penalty could be imposed per accident, it could have more clearly done so." *State v. Hartnek*, 146 Wis.2d 188, 430 N.W.2d 361, 363 (App. 1988).

The gravamen of the offense and the intent of the Legislature is not that a person stop and play the "good Samaritan." The language of the statute is that "the driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person ... *shall render to any person injured in such accident reasonable assistance*, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment." The purpose of the statute is obvious—those who are victims of an accident and who need assistance should be aided by those who are the most capable of doing so and this is regardless of the al-

truistic motives of those who must give the aid. The Wisconsin court put it this way:

"[The defendant] contends that Edith and Ellen Mattiazzi are not both 'victims' of his conduct in leaving the scene of the accident. [Citation omitted.] We disagree. Here, the perceived harm to the Mataizzis is the delay in receiving medical assistance—a delay which was in effect 'caused' by [the defendant] leaving the scene of the accident. It is this receipt of medical attention with the least possible delay which has been characterized as the 'obvious' intent of the legislature." *Hartnek*, 430 N.W.2d at 364.

The Double Jeopardy Clause has no application to a multiple victim offense when, as here, it is the legislative intent to aid all victims in a hit-and-run offense and, accordingly, to enforce this intent through the appropriate punishment for each individual not so aided. For these reasons, appellant's grounds for review are overruled and the judgments of the trial court and Court of Appeals are affirmed.

CAMPBELL and DUNCAN, JJ., concur in the result.

CLINTON, Judge, dissenting.

The offense is failure to stop and render aid under Article 6701d, §§ 38 and 40, V.A.C.S. At once appellant's vehicle struck and killed two persons, and he has been twice convicted. In holding that appellant committed two distinct offenses and thus there was no double jeopardy problem, the court of appeals relied on part One of the "landmark case" of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Spradling v. State* (Tex.App.—Beaumont No. 09–82–158–CR, September 7, 1983).[1]

Part One of *Blockburger* addressed a contention that "*two sales* charged in the second and third counts as having been made to *the same person* constitute a single offense." *Id.*, 284 U.S. at 301, 52 S.Ct., at 181.[2] As had *Blockburger*, the Beau-

---

**1.** Part One of *Blockburger* did not make it a "landmark case;" that was part Two (test for legislative intent as to whether a single act violative of two distinct statutory provisions is more

than one offense for purposes of multiple punishments).

**2.** All emphasis is supplied by the writer of this opinion unless otherwise indicated.

mont Court quoted from Wharton's Criminal Law (11th Ed.) § 34, and examined *Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915). But neither Mr. Wharton nor *Ebeling v. Morgan* tend to solve our problem here; the former is expounding on the abstract subject of "definition and analysis of crime," whereas the latter is determining whether Congress exhibited an intent to punish for successive acts.[3]

Returning to *Blockburger,* we find the Supreme Court applying Mr. Wharton's dictum as follows:

"In the present case, the first transaction resulting in a sale, had come to an end. The next sale was not the result of

the original impulse, but of a fresh one—this is to say, of a new bargain."

*Id.,* 284 U.S. at 303, 52 S.Ct., at 181. Then it discussed *Ebeling v. Morgan,* supra, quoting that part of the opinion demonstrating legislative intent "to protect each and every mail bag from *felonious* injury and mutilation," see note 3, *ante,* at 558. It cited a string of cases and, significantly, most are habeas corpus proceedings seeking release from further punishment on such grounds as the convicting court was without jurisdiction, exceeded its authority, imposed cruel and unusual punishment, and the like—none based on the Double Jeopardy Clause. See, e.g., the latest cited, *United States v. Daugherty,* 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309 (1926).[4]

3. While Mr. Wharton's Eleventh Edition is not readily available to us, both the Ninth and Twelfth are, and each contains substantially the same textual language quoted in those opinions. Mr. Wharton is discussing whether under common law "a particular offense is divisible ... susceptible of being divided into two or more offenses, each to be open to a separate prosecution." 1 Wharton's Criminal Law (9th Ed.) § 27, at 38; (12th Ed.) § 33, at 50. He classifies "diversity" into subgroups such as "time" and "object." It is with respect to "time" that he writes that which is quoted, *viz:*

"... [W]hen the impulse is single, but *one indictment lies,* no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, *separate indictments lie."*

(9th Ed), at 40; (12th Ed.) § 34, at 52, the latter stating in note 3, "The test is whether the individual acts are prohibited, or the course of action they constitute. If the former then each act is punishable separately. * * * * If the latter, there can be but one penalty," citing English cases except *Friedeborn v. Com.,* 113 Pa. 242, 6 A. 160, 57 Am.Rep. 464 (1886) (error to hold every business act done on Sunday is separate offense).

Mr. Wharton may have alluded to, but he was not discussing directly the law of jeopardy, for he extensively treats that doctrine in another chapter under "defenses." 1 Wharton's Criminal Law (12th Ed.) 531, § 393 ff.

In *Ebeling v. Morgan,* supra, accused had been convicted of six counts in a single indictment of mutilation of mail bags, and was sentenced to serve several terms of three years consecutively; at the end of the first three year term, he sought a writ of habeas corpus ordering his release from further confinement on the ground that he "had endured all the punishment that could be legally imposed by imprisonment *under said*

*indictment."* 237 U.S., at 628, 35 S.Ct., at 711. The issue was as described by the Beaumont Court, and the Supreme Court discerned from the statute that "it was the intention of the lawmakers to protect each and every mail bag from *felonious* injury and mutilation," so that although in a single transaction one might cut into several mail bags successively, the offense as to each "was complete when that bag was cut." *Id.,* at 629, 35 S.Ct., at 711.

The Supreme Court distinguished "continuous offenses" and cases that were "attempts to cut up a continuous offense into separate crimes in a manner unwarranted by the statute making the offense punishable." *Id.,* at 630, 35 S.Ct., at 712.

4. While not a habeas proceeding, *Daugherty* is still illustrative of the point that part One of *Blockburger* did not decide whether consecutive punishments are barred by jeopardy.

An indictment of three counts charged accused violated the Harrison Anti-Narcotic Act by making an unauthorized sale of cocaine to each of three different persons on different days. He was found guilty as charged, and the trial court assessed punishment at confinement for a term of five years on each count, adding in the judgment: "Said term of imprisonment to run consecutively and not concurrently." *Id.,* 269 U.S., at 361, 46 S.Ct., at 156.

On direct appeal Daugherty maintained the trial court *"exceeded its jurisdiction"* in imposing sentence of fifteen years, his essential contention being that "each sale should be taken as resulting from one and the same criminal intent and therefore the three counts charge only one crime." The circuit court of appeals rejected his contention, holding that "because each count charges a different sale to a different person on a different day, and if the sales were made as charged they constituted three separate offenses." However, it applied a rule that sentences imposed to multicounts run concurrently

The foregoing analysis of part One of the *Blockburger* opinion leads to the firm conclusion that the Supreme Court found the statute underlying two counts in one indictment did authorize a jury to convict for each sale of morphine on different days to the same person, and the trial court to impose sentence on each count and order the terms of imprisonment to run consecutively, in that each sale was the result of a "fresh" impulse and thus a separate offense. *Id.*, 284 U.S., at 301–303, 52 S.Ct., at 181.[5]

But, as pointed out *ante*, the Supreme Court did not decide *that* issue on principles of jeopardy. Therefore, the reasons given for the decision below are not supported by part One of *Blockburger*.

Ultimately, however, because it opined that the Court "has also approached the issue of whether particular conduct constitutes separate and distinct offenses by examining the applicable statutory language," from its reading this statute the

Beaumont Court believed "the legislative intent is that the offense in issue be completed each time a person fails to stop and render aid to an individual." 773 S.W.2d, at 555.

The approach may be supported generally by part Two of *Blockburger* (where only one act—a single sale of morphine to the same person—appeared to be proscribed by two statutory provisions), in that the Supreme Court adopted a rule of statutory construction to determine whether there are two offenses or only one. *Id.*, at 304, 52 S.Ct., at 182.[6] Clearly, however, that rule is not applicable here because we are not dealing with "two distinct statutory provisions." *Ex parte Rathmell*, 717 S.W.2d 33, at 35 (Tex.Cr.App.1986) (Clinton, J., dissenting, at 55, n. 6). Indeed, the State seems to recognize as much, while at the same time looking for benefit in *Blockburger* and *Ex parte Mike*, 632 S.W.2d 594 (Tex.Cr.App.1982), following *Ex parte McWilliams*, 634 S.W.2d 815 (Tex.Cr.App. 1982).[7] That rationale is inapposite here.

---

"in the absence of specific and definite provision therein that they be made to run consecutively by specifying the order of sequence," and it interpreted the judgment to mean that the sentence was for five years only. *Id.*, at 361–362, 46 S.Ct., at 156.

On certiorari, finding the circuit court was "clearly right" in denying the "one crime" contention, but that it erred in holding the sentence was for only five years, from its own reading the Supreme Court concluded that "the reasonable and natural implication from the whole entry" is to impose imprisonment for fifteen years, made up of three five year terms to be served consecutively in the same sequence as counts were alleged. *Id.*, at 363, 46 S.Ct., at 157.

5. That aspect of *Blockburger* may be contrasted with the *three decisions relied on by appellant*. In each, the ambiguous statute in question, without illuminating legislative history, required the appellate court to choose between two readings of what conduct Congress intended to be punishable more than once. "In that circumstance the [Supreme] Court applies policy of lenity and adopts the less harsh meaning." *Ladner v. United States,* 358 U.S. 169, at 177, 79 S.Ct. 209, at 214, 3 L.Ed.2d 199, at 205); *Bell v. United States,* 349 U.S. 81, at 83, 75 S.Ct. 620, at 622, 99 L.Ed. 905 (1955); *United States v. Deaton,* 468 F.2d 541 (CA5 1972), follows both *Ladner* and *Bell.* Thus none is based on the Double Jeopardy Clause, only *statutory construction and lenity.*

6. Editing *Morey v. Commonwealth*, 108 Mass. 433, at 434 (1871), the Supreme Court formulated the *"Blockburger* test," *viz:*

"... [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

7. The approach is similar to that taken by the Beaumont Court in its opinion, 773 S.W.2d at 554–555, believing that this Court has recognized an examination of the applicable statute may reveal that "particular conduct" may constitute separate and distinct offenses during the same transaction, citing *Jones v. State,* 514 S.W.2d 255 (Tex.Cr.App.1974), and *Ward v. State,* [148 Tex.Cr.R. 186], 185 S.W.2d 577 (1945). Let us review the cases better to comprehend what each does "recognize."

Taking *Ward v. State* first, by agreement two causes—aggravated assault with a motor vehicle and driving while intoxicated—were consolidated for trial with an understanding that evidence from both parties going to both offenses would be introduced at the same trial. The trial court found defendant guilty of aggravated assault and assessed punishment; defense counsel then pleaded former jeopardy to any conviction for "drunken driving;" trial court overruled the plea, found him guilty, and assessed punishment. Appeal concerned primarily the jeopardy question, and on original submission the Court

Article 6701(d), §. 38(b) does not in terms provide a culpable mental state. However, in *Goss v. State,* 582 S.W.2d 782 (Tex.Cr. App.1979), this Court held that V.T.C.A. Penal Code, § 6.02 applies to the offenses denounced by § 38(b), and further that the applicable culpable mental state is "knowledge of the circumstances surrounding his conduct (V.T.C.A. Penal Code Sec. 6.03(b), i.e., had knowledge that *an accident had occurred.*" *Id.,* at 784, 785; accord: *Steen v. State,* 640 S.W.2d 912 (Tex.Cr.App.1982) (plurality opinion by Judge McCormick that

culpable mental states are "intentionally and knowingly," *id.,* at 917). [8]

The plurality opinion in *Steen v. State,* supra, states that § 38(a) "sets out the duty of the driver of any vehicle involved in an accident resulting in injury to another." Except that there be an injury, its predecessor statute imposed a similar duty. See former article 1150, P.C. 1925. The duty under the latter was to stop and render aid, and the duty was violated either by failing to stop or, having stopped, by failing to give information or render aid to all injured persons.[9]

found several procedural faults but did also find, "The two offenses here are separate and distinct offenses." However, it went on to point out that in *misdemeanor offenses* under existing law the State was permitted to charge separate offenses in separate counts and obtain convictions on the different offenses so charged. Because the agreement to try both cases at the same time created a situation so similar to that legal procedure, there was no problem at all. *Id.,* 185 S.W.2d, at 578. (That situation, not so incidentally, is much like the federal practice reflected in part One of *Blockburger* whereby the government is permitted to allege separate offenses in a single indictment, and trial courts are authorized to convict on each, so long as none is the "same offense" as another. See *ante,* at 554–556.)

On rehearing, however, the Court took the issue more seriously and considered its merits, finding no double jeopardy, *viz:*

"Suffice it to say in this instance, we affirm that striking a man with an automobile and carrying him on the fender for approximately 140 feet, and striking another car and being drunk both times *could not be called one transaction under one volition.* An assault with an automobile and driving while drunk are *two separate and distinct transactions,* animated by *two separate and distinct volitions.* *Id.,* at 579. Thus *Ward* is not a "same transaction" case.

*Jones v. State* involved a conviction for rape and a second prosecution and conviction for burglary with intent to commit that rape. The Court did make the general statement that double jeopardy has no application "where separate and distinct offenses occur during the same transaction." To determine whether they were separate and distinct offenses, the Court relied on, e.g., *Morgan v. Devine,* 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915) (test is whether "separate acts have been committed with the requisite criminal intent and are such as are made punishable by the act of Congress"). *Id.,* at 640, 35 S.Ct., at 714. But, as to a jeopardy bar, the *Jones* decision rests on the circumstance that former articles 1399 and 1400, P.C.1925, "explicitly provide[d] that a person may be prosecuted

for burglary and for any offense which he commits after entry," and thereby distinguishing *Price v. State,* 475 S.W.2d 742 (Tex.Cr.App.1972), *viz:*

"... Conversely, in *Price* convictions for false imprisonment and aggravated assault against the same person were held to constitute double jeopardy and to violate the doctrine of carving. But in *Price,* unlike *Morgan* and the instant case, there was *no statute specifically establishing two separate crimes.*"
*Jones,* at 256. *Pena v. State,* 442 S.W.2d 691 (Tex.Cr.App.1969), cited by the Beaumont Court, also upheld convictions for burglary with intent to commit theft and the actual theft, because articles 1399 and 1400 expressly provided for successive punishments.

Manifestly, neither *Ward, Jones* nor *Pena* provide a rationale for finding a legislative intent that Article 6701d, § 38(b), authorizes as many successive prosecutions and punishments as there are injured persons. Indeed, in each case there was just one victim.

8. "A person acts intentionally ... when it is his *conscious objective or desire* to engage in the conduct or to cause the result." V.T.C.A. Penal Code, § 6.03(a). Because one cannot intend "circumstances surrounding his conduct," *id,* § 6.03, "intentionally" is not an appropriate culpable mental state, especially since "knowledge" is sufficient to hold an accused culpable for failure to stop and render aid. *Goss,* supra, and *Steen,* supra (Clinton, J., joining judgment, at 916).

9. The provision in the initial "Highway Law" on "failure to stop and render aid" applied "whenever" a motor vehicle "strikes any person or collides with any vehicle containing a person"—regardless of whether injury resulted. The offense was divisible. *May v. State,* 146 Tex.Cr.R. 115, 171 S.W.2d 488 (1943) (Opinions on Rehearing, at 490–491, 492) (offense complete upon failure to stop; failure to render aid another form of violation); *Morgan v. State,* 145 Tex.Cr.R. 276, 167 S.W.2d 765 (1943) (gist of offense is failure to stop after having struck something or someone, and such failure alone is

Under § 38(b), identified by the *Steen* plurality opinion as "the *penal* section," the breach of duty is either "failing to stop *or to comply with said requirements*," and it is to either breach that the requisite culpable mental state attaches. *Id.*, at 915 (original emphasis by Judge McCormick).

That is to say, as *Goss* held, the driver of a vehicle has to know it was "involved in an accident" in order that any duty attaches. *Id.*, at 785: "[T]he essential point that the accused must know an accident has occurred before the duty to stop and render aid arises, and before he may be held culpable for failure to stop and render aid, is *as sound today as then.*" The phrase "injury to or death of any person" in § 38(a) is but descriptive of circumstances surrounding

a violation). See *Scott v. State*, 90 Tex.Cr.R. 100, 233 S.W. 1097, at 1098 (1921), and 4 Branch's Ann.Penal Code (2nd Ed.) 147–148, Art. 1150, § 1767:

"The gist of this article is the failure of the motorist to stop after he has struck someone or a vehicle.... Such a driver must stop after the collision and comply with the terms of this article.... The driver must not only stop and render such aid and help as would appear necessary to any ordinary person at the time, but he must stop and render all necessary assistance and information which may be asked of him under said article, *irrespective of how the collision occurred or who was to blame for it.*"

While an indictment need not allege accused had knowledge an accident had occurred, the nature of the former statute was such that "absence of knowledge on the part of the driver that his car struck some person or vehicle would entitle him to an acquittal." *Goforth v. State*, 92 Tex.Cr.R. 200, 241 S.W. 1027, at 1028 (1922); *Stalling v. State*, 90 Tex.Cr.R. 310, 234 S.W. 914 (1921). Moreover, even with knowledge the duty to render aid is not absolute. Thus an "involved" driver might conclude his duty is to take an injured companion for treatment rather than remain at the scene, *Woods v. State*, 135 Tex.Cr.App. 540, 121 S.W.2d 64 (1938); one who stops is not under any legal obligation to render aid "when injured party's husband chose to carry her to the hospital," *Bowden v. State*, 172 Tex.Cr.R. 578, 361 S.W.2d 207, at 208 (1962); "which others present with means at hand considered not necessary or proper," *Powell v. State*, 170 Tex.Cr.R. 415, 341 S.W.2d 915, at 916 (1961); "when all aid was being given by others," *Williams v. State*, 132 Tex.Cr.R. 32, 102 S.W.2d 212 (1937).

In *Scott v. State*, supra, constitutionality of the law was challenged in that it was not sufficiently specific in defining the offense sought to be denounced. Noticing that in many other states similar laws had been enacted, construed and upheld against various attacks, the Court believed this one could be upheld without doing violence to principles upon which other provisions had been held void for indefiniteness. *Id.*, 233 S.W. at 1098–1099.

Among considerations that led the Court to uphold the statute, the following are still germane here, *viz:*

"A party operating an automobile which may injure another in collision ought to be impelled by humanitarian motives, in the absence of any law, to tender aid in an effort to minimize the result of the injury. In doing this he would naturally and instinctively do the thing which to him, under the circumstances, appeared to be proper to alleviate suffering. If his own car was uninjured so that it might still be operated, perhaps the most natural thing for him to do would be to try and get *the injured persons* to a physician or surgeon as quickly as possible.

*The statute ought not to be given such a construction as would or might result in manifest harm to a person accused of violating it.* * * * * * That the statute contains a humane provision cannot be gainsaid. If it can be construed to require that to be done which ought to be done even in the absence of law, ... it ought, as so construed, to be upheld." *Id.*, at 1099. Accordingly the Court concluded: "We have reached the conclusion that a fair and reasonable construction of the statute in question is that the party should render all the aid that would reasonably appear to him as an ordinary person at the time to be necessary, including taking *the injured persons* to a physician or surgeon, *if so requested by them*, or if it reasonably appears to accused that medical treatment be necessary. The jury ought to be so instructed ... that, if accused gave all aid which under the circumstances reasonably appeared to him to be necessary, he should be acquitted, and that, if under all the circumstances it did not appear to him to be necessary to carry *the injured parties* to a physician or surgeon for treatment, he could not be convicted for failure to do so, unless he was *requested by them* to be so taken and declined."

*Id.*, at 1100.

That construction was confirmed in, e.g., *Williams v. State*, 132 Tex.Cr.R. 32, 102 S.W.2d 212 (1937):

"... In other words, in cases of collision of cars, it appears plain that the parties must not fail to stop, but must do so, and also render to the person struck, *or the occupants of the car collided with*, all such help and assistance as the facts and circumstances would dictate to a person of ordinary temperament, disposition, and feeling under like circumstances."

*Id.*, 102 S.W.2d, at 212. See also *People v. Thompson*, 259 Mich. 109, 242 N.W. 857 (1932); 16 ALR 1425; 66 ALR 1228; 101 ALR 911; 23 ALR2d 497.

conduct, the existence of which a driver must be aware in order that there be a duty to stop. V.T.C.A. Penal Code, § 6.02(b).

The public duty thus imposed in those circumstances on all citizens by former article 1150 and § 38(a) is humanitarian in nature and purpose. *Scott v. State* and *People v. Thompson,* both supra. But though there be a putative duty to act, criminal culpability does not lie in merely being involved in an accident producing prescribed results. When a driver knows that a person is injured and regardless of how many more persons are injured, the legislative objectives are twofold: first, to cause an "involved" driver to stop; second, to cause an "involved" driver who does stop to remain at the scene and, among other things, to render to all injured persons such reasonable assistance that appears necessary or is requested by the injured. *Ibid.,* § 38(a) and 40. The "forbidden conduct" is "knowingly" failing to stop in those circumstances or, having stopped, failing to provide information and assistance. And a failure to stop is a complete offense, as is stopping but then failing to provide information or to render reasonable assistance to every injured person.

A prosecution under the statute is not for injuring or killing "any person," but "for the neglect or failure to do that which the dictates of humanity would have demanded, and which [the Legislature] required to alleviate the suffering of [every person injured in such accident]. The statute [does] not contemplate punishment for the injury or for the death." *Stalling v. State,* 90 Tex.Cr.R. 310, 234 S.W. 914, at 916 (1921). Requiring that a driver who knows his vehicle is involved in an accident resulting in injury of or death to a person provide certain information along with reasonable medical assistance to the injured does not mean that he has committed an offense or that the accident and its consequences constitute a crime. *Id.,* 92 Tex. Cr.R. 354, 243 S.W. 990 (1922).[10]

In this light, the language of §§ 38 and 40 does *not* demonstrate legislative intent to allow successive prosecutions, on account of such phrases as "injury to or death of to any person," or render aid "to any person." More clearly, in context of §§ 38 and 40, and the legislative intent, purpose and objectives and nature of the offenses ever since 1917, see *ante,* at 560 –562, the gravamen of one offense is that knowing there has been an accident, an "involved" driver violates a public duty by failing to stop; the duty to stop is single, a failure stems from one volition.[11]

The other offense is that with the same knowledge and stopping, an "involved" driver, unless excused by circumstances, violates a duty by failing to provide prescribed information or to render reasonable assistance indiscriminately to every injured person; here the duty may be divisible into providing information or rendering aid, yet a failure to perform the whole duty is still a single volitional omission.

The requisite culpable mental state globally embraces an accident and its consequences. That two or more persons were injured in the accident does not make but one knowing failure to act a separate, distinct violation of the statute as to each. Its provisions have always contemplated that a

---

**10.** In discussing a contention that requiring a driver give number of his vehicle and name and address of owner seeks to compel a citizen to give evidence against himself, the Court pointed out:

"... It would not appear that the mere fact of a collision of an automobile with the person or vehicle of another would ipso facto constitute a crime, and the right to refuse self-incrimination would not per se arise from the fact of such collision. *There seems nothing in the statute under consideration which is based upon the hypothesis that either party to a collision is thereby committing a crime.* The legal duties sought by said statute to be imposed in such case are apparently only those which humanity and necessity would dictate. Scott v. State, 90 Tex.Cr.R. 100, 233 S.W. 1097, 16 A.L.R. 1420."

**11.** See *Spradling v. Texas,* 455 U.S. 971, 975, 102 S.Ct. 1482, 1484, 71 L.Ed.2d 686 (1982) (Justice Brennan dissenting from denial of petition for certiorari: "Spradling's striking and failing to render aid to the two women was but a single act[.]"

good Samaritan is ready and generous in helping all those in distress.[12]

Accordingly, a correct construction of the statutory provisions is that when required to do so under the circumstances, an "involved" driver knowingly failing to stop and render aid commits but one offense even though more than one person may be injured. We should so hold.

Therefore, the Beaumont Court of Appeals erred in concluding that "the number of victims ... can dictate the number of allowable trials, convictions and punishments against a defendant." The second trial of appellant was barred by the double jeopardy clauses in the Fifth Amendment and in Article I, § 14, codified as Article 1.10, V.A.C.C.P.

The majority here causes this Court to err as well. *State v. Hartnek,* 146 Wis.2d 188, 430 N.W.2d 361 (App.1988), is inapposite. Pretermitted by the majority is that "a multiple victim accident could invoke several of the differing penalties," varying according to extent of injury or death of a person. *Id.,* 430 N.W.2d at 363.

MILLER, J., joins this opinion.

TEAGUE, Judge, dissenting.

If you have carefully read, and were able to digest this Court's majority opinion of *Ex parte Rathmell,* 717 S.W.2d 33 (Tex.Cr. App.1986), I suggest it is not necessary for you to read the majority opinion in this cause because it is merely a xerox copy, with necessary changes of the names of the parties, the offense, etc., of the *Ex parte Rathmell* majority opinion, whose author, Presiding Judge McCormick, also writes the majority opinion in this cause.

Perhaps hoping that a majority of this Court will in the near future see the error of the majority opinion's ways, or at least hoping that a more enlightened majority of this Court in the future will see the error of the majority opinion in this cause, I file this dissenting opinion. I confess: To a certain extent this dissenting opinion is also a xerox copy of the dissenting opinion that I filed in *Ex parte Rathmell.*

Over 100 years ago, the Supreme Court of the United States in *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), stated the following:

> [W]e do not doubt the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being tried for it. 85 U.S. at 173.

I am unaware of any authority where the Supreme Court has disavowed, expressly overruled, or retreated from this principle of law.

The record reflects that Hubert Richard Spradling, henceforth appellant, while driving a motor vehicle, *through one single criminal act,* knowingly caused his vehicle to strike Vicki Rash Norvell and Bobby Folks Rash, who were then walking together on the side of a public roadway, and then left the scene of the accident. The gist of the offense is the latter element.

**12.** Except that the indictment assigned fault for causing an accident to accused when all the statute requires is that one be the driver of "any vehicle *involved* in an accident," see n. 8 *ante,* at 560, the plurality opinion in *Steen* seems to be in accord. Speaking of requisite allegations in a charging instrument, *Steen* says, "The proper allegation is that the accused culpably failed to comply with the requirements of Section 38(a), a known duty," and "to *require more* [averments] would amount to an *exercise in semantics.*" *Id,* at 915. Then it lists "the elements of an offense" under § 38(b), *viz:*

1. a driver of a vehicle
2. involved in an accident
3. resulting in injury or death of any person
4. *intentionally and* knowingly

5. fails to stop and render reasonable assistance.
*Ibid.*
(As to propriety of the underscored culpable mental state, see n. 8 *ante,* at 560.)

The indictment was held adequate in that it alleged, *inter alia,* accused "knowingly failed to stop and render all reasonable assistance;" that "necessarily and sufficiently notifies the accused that he failed to perform a known duty [under § 38(a)]." *Ibid.* Despite the facts that appellant did not stop and there were three occupants in the other vehicle, a mother who was injured and her two minor children who were killed, there is no hint in the opinion that accused owed a separate and distinct duty as to each; it was enough that he wholly failed to stop and render *any* assistance.

Both victims died as a result of the injuries they sustained. Appellant was indicted by separate indictments for each death, for failure to remain at the accident scene.

Appellant was first prosecuted and convicted on an indictment charging him with knowingly failing to stop and render aid to Norvell. A jury assessed appellant's punishment at five years' confinement in the Department of Corrections and also assessed a $5,000 fine. The time was probated but the fine was not. The Beaumont Court of Appeals affirmed that conviction. *Spradling v. State,* 628 S.W.2d 123 (Tex. App.–9th 1981). This Court, without written opinion or comment, refused appellant's petition for discretionary review on April 21, 1982. *Spradling v. State,* Tex.Cr.App. No. 129–82. The issue in this cause was not implicated in that cause.

Thereafter, the State, obviously disappointed in the punishment that the first jury had assessed appellant, sought to get another bite at appellant by prosecuting him on the Rash indictment. Appellant then went on the offensive to prevent this from occurring. He filed a pretrial plea on the ground that the Double Jeopardy Clauses of the Federal and State Constitutions barred the second trial. The trial court denied his plea. He then attempted to appeal that order, but his efforts were unsuccessful. See *Spradling v. State,* 634 S.W.2d 89 (Tex.App.–9th 1982). Appellant then sought a writ of prohibition from this Court. On June 16, 1981, in an unpublished and unnumbered order in this Court's cause of *Spradling v. Burgess and Wright,* this Court denied appellant leave to file his application for the writ of prohibition. Undaunted, appellant trucked on to Washington, D.C., where the Supreme Court of the United States, over a strong dissenting opinion filed by Justice Brennan, joined by Justice Marshall, denied his petition for certiorari. *Spradling v. Texas,* 455 U.S. 971, 102 S.Ct. 1482, 71 L.Ed.2d 686 (1982).

In the dissenting opinion that Justice Brennan filed, he observed that "the Double Jeopardy Clause of the Fifth Amendment, applied to the States through the

Fourteenth Amendment, requires that, except in extremely limited circumstances, not present here, 'all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction' be prosecuted in a single proceeding." Justice Brennan correctly concluded from the facts that appellant's "striking and failing to render aid to the two women was but a single act—the accident and its aftermath a single occurrence."

Thereafter, the State prosecuted and the jury convicted appellant on the Rash indictment. The second jury, however, assessed appellant a non-probated sentence of nine months' confinement in the Orange County Jail and a fine of $5,000. The Beaumont Court of Appeals affirmed. *Spradling v. State,* (Tex.App.–9th, No. 09–82–158–CR, September 7, 1983).

This Court granted appellant's petition for discretionary review in order to review the court of appeals decision, which essentially held that although appellant committed only one single criminal act, by failing to remain at the accident scene, but because there was more than one victim, he could be prosecuted and punished more than one time for the same accident that resulted in two deaths.

It should be observed that our failure to stop and render aid statute, see Art. 6701d, §§ 38 and 40, V.A.C.S., which is a civil statute that carries criminal penalties, provides for just that: It is an offense for a driver of a motor vehicle to knowingly fail to stop and render aid, no matter how many victims there might be. The statute does not have any sort of scale for punishment, depending on the number of victims or the severity of their injuries. There is absolutely nothing in the statute from which one might infer or conclude that the Legislature intended to allow successive prosecutions for multiple victims. Of course, had the Legislature seen fit to impose more than one penalty, i.e., a separate penalty for each victim, or a separate penalty depending on the severity of the injuries, it could have done so, but it didn't. Without any showing of what the legislative intent was when it enacted the statute,

Presiding Judge McCormick, the author of the majority opinion, concludes that this is what the Legislature meant when it enacted the statute, even if it never expressed its intent anywhere.

I find Presiding Judge McCormick's position untenable when one considers the fact that he is actually acting as a "super" Legislator might act. In this regard, I point out that Presiding Judge McCormick's views that he does not believe that this Court or its members should ever act as "super" legislators or collectively act as a "super Legislature", and that "it is not the proper function of the courts to invade the province of the legislative field," *Jackson v. State*, 718 S.W.2d 724, 729 (Tex.Cr. App.1986), are well known. Thus, shouldn't he be filing a dissenting opinion to his own majority opinion?

Once again, see *Ex parte Rathmell*, Presiding Judge McCormick, the author of the majority opinion, and the members of this Court who join his majority opinion, "exhibit and display an almost naive understanding of the concept of double jeopardy, which has roots that run deep into Greek and Roman times." (37). And once again, they "value the ancient concept of double jeopardy much like one might value a cockroach." (38).

The principle of double jeopardy in the respective Bills of Rights is the most ancient of all the principles set out therein. I will not repeat here my discussion of the concept and guarantee against double jeopardy, as provided by Art. I, § 14, of the Texas Constitution and the Fifth Amendment to the Federal Constitution that I set out in the concurring and dissenting opinion that I filed in *Ex parte Rathmell*, because it would unduly and unnecessarily elongate this opinion.

The double jeopardy issue here concerns the two distinct interests of finality and avoidance of double punishment.

Both issues, whether appellant committed only one criminal wrong, versus two criminal wrongs, by failing to remain at the scene of one accident, and whether he may be twice punished for committing only one criminal wrong, where the involved statute does not provide for multiple punishments, are before this Court to resolve.

Apparently no longer finding as he did in *Ex parte Rathmell*, that the Tennessee case of *State v. Irvin*, 603 S.W.2d 121 (Tenn.1980), supports his position, perhaps because he now sees that it was totally devoid of any legal reasoning, Presiding Judge McCormick leaves the cool hills of Tennessee and goes to the cool waters that the State of Wisconsin has to offer, where he finds the intermediary appellate court opinion of *State v. Hartnek*, 146 Wis.2d 188, 430 N.W.2d 361 (1988), petition for review by the Wisconsin Supreme Court denied. Presiding Judge McCormick does not inform us whether or not in his travels from Tennessee to Wisconsin he stopped off in Illinois and read the very persuasive decision of another intermediary court of appeals.

However, in my travels in this area of the law, I discovered the opinion of *People v. Sleboda*, 166 Ill.App.3d 42, 116 Ill.Dec. 620, 519 N.E.2d 512 (2 Dist.1988), certiorari to the Illinois Supreme Court denied. Contrary to the court in Wisconsin on whose decision Presiding Judge McCormick relies, which court is composed of only a presiding judge and two judges, the Illinois court is composed of a presiding Judge and seven justices.

I do not, however, gauge whether or not a court's opinion is persuasive by the number of judges or justices that court might have. In this instance, I find that the Illinois court's opinion is persuasive because it was dealing with an Illinois statute that is almost identically worded to §§ 38 and 40 of Art. 6701d. That, however, is not true of the Wisconsin statute.

Justice Inglis of the Illinois court, in a unanimous opinion for that court, ruled that because the defendant in that cause was only involved in one accident he could be convicted only once for leaving the scene of an accident involving death. Justice Inglis then turned his sights on the Illinois statute and pointed out the following: "We find that the statute itself indicates that an individual can only be convicted once for leaving the scene of one acci-

dent since the focus is on remaining at the scene of the accident ... [T]he statute itself recognizes that there may be several persons involved in one accident. Therefore, while there may be several persons injured in an accident, there is only one accident scene at which the driver has a duty to remain." (522). The Illinois statute, like our own statute, provides only for one penalty for each failure to stop.

In this instance, there was only one accident and only one accident scene.

Probably the biggest distinction between our "failure to stop" statute and the Wisconsin "failure to stop" statute is that the Wisconsin statute provides for a smorgasbord of punishments, depending on whether death, injury, or great bodily harm results. Our statute has no such provision, thus evidencing an intent on the part of our Legislature that there shall be only one prosecution and only one punishment, regardless of the number of victims, for knowingly failing to remain at the scene of an accident.

Clearly, given the issues that are before this Court to resolve, and the provisions of the Wisconsin statute that relate to punishment, as compared to our statute's provisions, the Wisconsin court's decision is totally inapplicable to this case.

Furthermore, given the fact that the Wisconsin Supreme Court has mandated, see *State v. Rabe*, 96 Wis.2d 48, 291 N.W.2d 809, fn. 16 (1980), that it is now part of the Legislative process of that State's government, and no longer an independent judiciary, and that any of its "old" decisions that are "out of touch with the growing menace posed by drunk drivers to our citizenry's life and bodily security" should not be followed either by that court or any of its intermediary courts, if they are not written in such a fashion so to "promptly eradicate" by a stroke of the pen the problem of drunk driving in that state, it is difficult to believe that anyone will find any of that state's court's decisions persuasive authority.

Notwithstanding my caustic treatment of the majority opinion, if one can accept the fact that this Court is no longer a law court, but has become in more recent times a policy making court, for which one does not need any law books, although we still have them, the majority opinion is at least understandable, although unacceptable as an opinion that should be interpreting a specific statutory law of this State rather than setting policy for the residents and citizens of this State.

Therefore, I respectfully dissent.